IRVING SLIFKIN *v.* CONDEC CORPORATION
(5544)

DUPONT, C. J., BIELUCH and NORCOTT, Js.

Argued October 7, 1987—decision released March 1, 1988

*Alan Neigher,* for the appellant (plaintiff).

*William A. Phillips,* for the appellee (defendant).

BIELUCH, J. This is an appeal by the plaintiff from a judgment rendered in favor of the defendant in a suit for wrongful discharge from employment in violation of a contract between the parties. The action was heard by an attorney state trial referee who found in favor of the defendant on all counts in his report to the court. The plaintiff's motion to correct the referee's report was granted as to the request for clarification, but denied insofar as it sought to strike certain findings and to add others. Upon accepting the referee's report after overruling the plaintiff's objections, the court rendered judgment for the defendant. We find error.

The plaintiff's amended complaint was in four counts: (1) breach of contract; (2) promissory estoppel; (3) tortious discharge; and (4) breach of an implied covenant of good faith. The third count was withdrawn at trial.

The first count alleged that on August 24, 1977, the defendant agreed to employ the plaintiff as general counsel, for which he would receive an annual salary and bonuses and would participate in the company's

pension, profit sharing and stock incentive plans for "a minimum of twelve years . . . in order to qualify for 100% vesting in each of the benefit plans offered by the defendant"; that on June 4, 1979, the parties "signed a written memorandum which set forth defendant's obligation to employ plaintiff until such time as plaintiff qualified for 100% vesting in each of the benefit plans offered by the defendant"; and that on or about October 1, 1980, the corporate president, without giving a reason, informed the plaintiff that he would be terminated on December 31, 1980, which date was later extended to April 17, 1981. Since the plaintiff suffered no monetary loss after his discharge, his damage claim was limited to the loss of vested benefits in the defendant's pension, profit sharing and stock incentive plans.

The second count sought the same damages on the ground of promissory estoppel and alleged that the plaintiff, age 55 in 1977, was then offered relocation in Houston, Texas, by his employer, Shell Oil Company; that he was unwilling to give up his employment benefits accrued over twenty-nine years unless he was assured of sufficient employment by the defendant to qualify for 100 percent vesting in all of its benefit plans; that these facts were known to the defendant, the president of which therefore agreed to employ the plaintiff as counsel for twelve years.

The fourth count alleged a breach of an implied covenant of good faith through the defendant's false inducement that the plaintiff leave his former employment. In this count the plaintiff additionally sought punitive damages and attorney's fees.

The controversy focuses on the plaintiff's employment contract as it began as an oral agreement and was subsequently put in writing during his employment. The plaintiff, an attorney since 1948, was employed in the corporate legal department of Shell, but did not

desire to relocate with that company to Houston. Wishing to remain in the New York City area, he was put in contact with the defendant. Within a period of weeks, the parties reached an agreement by which the plaintiff was employed by the defendant as its general counsel. The plaintiff thereupon terminated his employment with Shell. At the time of his departure from Shell, the plaintiff was fully vested in its pension, profit sharing and stock incentive plans. Had he continued there, these benefits would have increased directly with his salary.

The attorney trial referee found that the oral understanding at the time of employment was that the plaintiff was to start at an annual salary of $55,000, with periodic revaluation and bonuses. In addition, he was to participate in the employer's pension, profit sharing and stock purchase plans. All of this was impliedly conditional upon satisfactory service by the plaintiff. The attorney trial referee did not find, as the plaintiff claimed, that the defendant agreed to a definite term of employment for twelve years, the minimum period required for the vesting of the plaintiff's rights in the defendant's benefit plans.

In 1978 and 1979, the plaintiff's salary was successively increased, and he was also given bonus payments. On January 5, 1979, a memorandum was prepared for the defendant's president, with copy to the plaintiff, outlining the plaintiff's retirement benefits. Becoming concerned that he had no written contract guaranteeing employment until the vesting of his retirement benefits, the plaintiff, on May 19, 1979, drafted a memorandum agreement for execution by the defendant's president, Gerald Rosenberg. It read as follows: "This will confirm our discussions, both prior and subsequent to my employment, relating to my completion of sufficient years of service during my employment as General Counsel of Condec Corporation to qualify for 100%

vesting in each of the employee benefit plans currently offered, as they now exist or may be modified or amended in the future, and any such plans which may hereafter be adopted. It is agreed that I shall be employed by Condec Corporation at a competitive and adequate compensation for at least such period of years as is required to accomplish 100% vesting in the employee benefit plans referred to above, unless discharged for due cause, i.e., dishonesty, or criminal conduct injurious to Condec."

The defendant's president, Gerald Rosenberg, refused to sign the proposed agreement as "too detailed." In its place, he had the plaintiff modify the agreement to state: "At the time of my employment, it was agreed, in view of my age being in excess of 55 years, that I would be afforded an opportunity to continue in the employ of Condec Corporation for a sufficient number of years to qualify for 100% vesting in each of the employer benefit plans currently offered, or as modified or amended or as adopted, in the future." This revision was then signed by the parties on June 4, 1979, and the plaintiff continued in the defendant's employ.

In 1980, the plaintiff was elected assistant secretary of Condec by its board of directors. That fall, however, he failed to obtain a salary review. Upon his inquiry about this, he met in October with Rosenberg, who informed him that his services were unsatisfactory because "he hadn't grown with the job," and that he was being terminated. In the meantime, the defendant had hired the plaintiff's replacement. The plaintiff left the defendant's employ on April 17, 1981. Upon his termination he received no benefits under the defendant's pension, profit sharing or stock incentive plans. The plaintiff has since obtained other employment, but he is ineligible to participate in this employer's benefit plans because of his age.

The attorney trial referee found that the plaintiff's proposed agreement of May 29, 1979, implied an absolute agreement for employment in the terms, "[i]t is agreed that I shall be employed," but this draft was not accepted by the defendant. The provision thereafter dictated by the corporate president and accepted on June 4, 1979, by the plaintiff, "that I would be afforded an opportunity to continue in the employ of Condec Corporation," was found by the trial referee, however, to imply "that [plaintiff's] employment would be subject to the performance of satisfactory service."

The referee made three additional relevant findings: (1) the plaintiff offered no evidence of a standard of service, which if performed by him, would have put the defendant in breach of the agreement; (2) the duties of general counsel "are varied and vague of precise definition and are thus necessarily required to meet the reasonable demands of management"; and (3) the plaintiff was terminated by reason of his failure to provide services to the reasonable needs of management. On the basis of his findings, the attorney trial referee concluded in his report to the court that judgment should be rendered for the defendant.

The plaintiff's motion to correct the report was denied by the referee, except for the following clarifications: The original employment contract was entirely oral. The writing submitted several years later contained language at the express direction of the defendant, which, when coupled with the prior writing of the plaintiff and reviewed by the defendant, "must be read to include satisfactory performance by the plaintiff." The original oral agreement, the rejected writing and the executed writing are ambiguous and their ordinary meaning requires that a party being paid for service must render satisfactory service within the context of his employment. The writing relied upon is at best a partial memorialization of an agreement that was ini-

tially oral and continued so for a period of years and included review annually to determine the level of service. Rosenberg told the plaintiff what he wished the writing to contain and the plaintiff in fact returned to his office and drew the document. The signed document was the understanding of both parties when read in light of Rosenberg's review of the original submission.

The plaintiff excepted to the referee's response to the motion to correct his report and objected to its acceptance. The trial court, however, rendered judgment on the referee's report.

The plaintiff has appealed from that judgment. He claims that the court erred (1) in finding that the phrase "afforded an opportunity to continue in the employ of Condec Corporation" in the employment agreement "clearly implies that employment would be subject to the performance of satisfactory service," (2) in not finding that the plaintiff's discharge was arbitrary and without good cause, and (3) in not finding a breach of the employment contract and awarding damages to the plaintiff. We find error.

The plaintiff's three claims of error stem from one basic underlying issue: What is the proper interpretation of the employment contract entered into by the parties and documented in writing on June 4, 1979?

In construing an employment contract, the ordinary rules of contract interpretation apply. "When construing a contract '[a] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings.' *Downs* v. *National Casualty Co.,* 146 Conn. 490, 494–95, 152 A.2d 316 (1959); *Reese* v. *First Connecticut Small Business Investment Co.,* 182 Conn. 326, 327, 438 A.2d 99 (1980); *Burkle* v. *Car & Truck Leasing Co.,* 1 Conn. App. 54, 57, 467 A.2d 1255 (1983).

In the absence of a special meaning, the words used must be taken in their ordinary and popular sense. *Lake Garda Improvement Assn.* v. *Battistoni,* 160 Conn. 503, 512, 280 A.2d 877 (1971)." *Nesin* v. *New England Machinery, Inc.,* 5 Conn. App. 547, 550, 500 A.2d 965 (1985).

"The interpretation of a contract must be made in accordance with the terms employed in the instrument and a court cannot by that means disregard the words used by the parties or revise, add to, or create a new agreement." *Collins* v. *Sears, Roebuck & Co.,* 164 Conn. 369, 374, 321 A.2d 444 (1973). The court cannot add to a contract a new term not previously considered by the parties, even though on later review of the contract by one of them it appears desirable to do so, and in all probability it could have been originally inserted. Id., 374–75. That is what the trial court did in this instance by acceptance of the attorney trial referee's report and finding that the agreement of June 4, 1979, "clearly implies that employment would be subject to the performance of satisfactory service."

The writing of June 4, 1979, serves two functions. First, it confirms the oral agreement made at the outset of the plaintiff's employment by the defendant. Second, it reduces that agreement to writing. The clear and unequivocal language of the written agreement exhibits an employment contract for a definite term of "a sufficient number of years to qualify for 100% vesting in each of the employer benefit plans currently offered, or as modified or amended or as adopted, in the future." The duration of this employment contract was actuarially computable, and such a computation was prepared for the defendant. The agreement provides for a definite period of employment. Although a condition of satisfactory performance by the plaintiff might have been reasonably included in the terms of employment by the defendant at the outset of the

employment or at the time of signing of the agreement on June 4, 1979, such a provision was not included and the parties did not agree to such a condition. The court erred in adding this proviso to the employment contract.

The attorney trial referee found that the original contract between the parties was entirely oral. That is undisputed. The agreement of June 4, 1979, by its plain terms is a memorandum of the prior oral understanding confirmed by the signatures of the parties. The attorney trial referee affirmed that in his findings, but extended its terms by adding a new provision which he found to be implied in the agreement, namely, that the plaintiff's "employment would be subject to the performance of satisfactory service." The attorney trial referee's express reason for the inclusion of this condition, that "[t]he writing relied upon is at best a partial memorialization of an agreement that was initially oral and continued so for a period of years and included review annually to determine the level of service" is without factual or legal basis.

The attorney trial referee's clarification of his conclusion for this new condition of employment is circuitous. He reasons thus: (1) "The writing submitted several years subsequent [to the oral contract] contains language at the express direction of the defendant, which, when coupled with a prior writing submitted by the plaintiff and reviewed by the defendant, must be read to include satisfactory performance by plaintiff"; and (2) "The original oral agreement, the rejected writing and the executed writing are ambiguous and their ordinary meaning requires that a party being paid for service must render satisfactory service within the context of his employment."

In his original report to the court, the attorney trial referee found that "[a]lthough the contents of [the

agreement of June 4, 1979] were essentially dictated by the defendant's president, they were, in fact, drafted by the plaintiff, reviewed by him and subscribed by him and he accepted the contents of [this agreement] in its plain meaning." Notwithstanding its "plain meaning," however, the attorney trial referee extended its terms by grafting onto it the implied subjective standard of "satisfactory service." Support for this conclusion was found by the referee in his comparison of the terms of the signed agreement with those proposed by the plaintiff on May 29, 1979. The words "afforded an opportunity to continue in the employ" contained in the final agreement were substituted for the earlier language, "it is agreed that I shall be employed." Finding that the earlier provision implied an "absolute agreement to employ," the referee concluded that the substitution, therefore, "clearly implies that employment would be subject to the performance of satisfactory service."

The attorney trial referee found that the earlier draft "[was] not a memorialization of the parties' agreement as to plaintiff's employment." That is evident in its terms, e.g., "[t]his will confirm our discussions, both prior and *subsequent* to my employment," and "[i]t is agreed that I shall be employed by Condec Corporation *at a competitive and adequate compensation.*" (Emphasis added.) The first draft also contained the provision that the plaintiff could be "discharged for due cause, i.e., dishonesty, or criminal conduct injurious to Condec." Although this express clause was apparently not accepted by the defendant's president in his dictation of a different draft, there was no direction that the condition of "performance of satisfactory service" be substituted for it. The attorney trial referee's implication of such a term as an addition to the plain meaning of the accepted draft was not justified by law. It was not a provision added to the contract by implication of law or fact.

The provision in the agreement of June 4, 1979, that "[a]t the time of my employment, it was agreed, in view of my age being in excess of 55 years, that I would be afforded an opportunity to continue in the employ of Condec Corporation for a sufficient number of years to qualify for 100% vesting in each of the employer benefit plans" has a plain meaning in its language. It connotes an offer of employment for the period specified. It is our conclusion that this agreement confirms the original offer of an employment contract to the plaintiff by the defendant which was accepted by the plaintiff orally at the outset of their relationship and in writing on that date.

The employment contract executed by the plaintiff and the defendant on June 4, 1979, was for a definite or determinable period of time. Where a contract of employment is not for a definite or determinable duration, it is terminable at the will of either party at any time and for any reason not involving " 'impropriety . . . derived from some important violation of public policy.' *Sheets* v. *Teddy's Frosted Foods, Inc.*, [179 Conn. 471, 475, 427 A.2d 385 (1980)]." *Magnan* v. *Anaconda Industries, Inc.*, 193 Conn. 558, 572, 479 A.2d 781 (1984); *Battista* v. *United Illuminating Co.*, 10 Conn. App. 486, 497, 523 A.2d 1356, cert. denied, 204 Conn. 803, 525 A.2d 1352 (1987); see *Morris* v. *Hartford Courant Co.*, 200 Conn. 676, 679, 513 A.2d 66 (1986). Performance of satisfactory service is not a measurable standard that would prevent an employer from dismissing without reason an employee under contract for a definite or determinable term. Being subjective in nature, its only measure is the personal choice of the employer. It does not require that there be an accountable reason for termination of employment that is subject to judicial scrutiny. Its scope does not reach that of good or just cause for termination of employment.

An employment contract for a definite or determinable term, however, may be terminated by either party only for good or just cause. Good cause, as distinguished from the subjective standard of unsatisfactory service, is defined as "[s]ubstantial reason, one that affords a legal excuse . . . [l]egally sufficient ground or reason." Black's Law Dictionary (5th Ed. 1979). Good cause or " '[j]ust cause' substantially limits employer discretion to terminate, by requiring the employer, in all instances, to proffer a proper reason for dismissal, by forbidding the employer to act arbitrarily or capriciously. See *Pierce* v. *Ortho Pharmaceutical Corporation,* 166 N.J. Super. 335, 341, 399 A.2d 1023 (1970)." *Sheets* v. *Teddy's Frosted Foods, Inc.,* supra, 475. In any contract of employment for a fixed period, an employee prematurely discharged without good or just cause may recover damages. *Roy* v. *Woonsocket Institution for Savings,* 525 A.2d 915, 917 (R.I. 1987); see *Isenberg* v. *California Employment Stabilization Commission,* 30 Cal. 2d 34, 39, 180 P.2d 11 (1947); *Saari* v. *G. C. Dates & Associates,* 311 Mich. 624, 628–29, 19 N.W.2d 121 (1945).

We hold that the plaintiff's contract with the defendant Condec was for a definite or determinable period of time. As such, it could only be terminated for good cause. The attorney trial referee erred in finding that the contract was for an indefinite time period and could be terminated at the discretion of Condec for the alleged reason of unsatisfactory performance by the plaintiff.

There is error, the judgment is set aside and the case is remanded for a new trial.

In this opinion the other judges concurred.