[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In his amended complaint the plaintiff alleges a wrongful discharge from employment in breach of contract in the first count. In the second count he bases his action on intentional misrepresentation or fraud. There is a third count which at the outset of the trial was withdrawn.
The defendant company is in the business of providing engineering personnel and engineering services for manufacturing establishments. It maintains a regional office in Wethersfield in which one of the principal activities was sales. The plaintiff was hired to be Division Manager of that office.
Prior to the hiring Mr. Strouch met with Mr. Milani, the Company's president. He testified that, having worked for a rival firm, the Yoh Company, the defendant company was interested in him. He also claims — and this is the primary factual issue in this case — that he was guaranteed a minimum of two years of employment. Mr. Milani, on the other hand, denies this saying that only the commission rate for a two year period was guaranteed. In support of this statement he points to a letter dated November 10, 1988 which he subsequently wrote to the plaintiff in which he informed him that the defendant company guaranteed only that the commission rate was guaranteed for two years.
In its pertinent part it read as follows:
 "As we agreed, your starting salary will be $42,000 per year with a commission of 5% of contribution for all operations under your control. We will guarantee a minimum commission of $18,000 for your first two years of employment.
 Benefits, salary, territory, etc. of your employment package will be as we agreed and clearly CT Page 11563 outlined in our standard manager agreement."
It is noted that the standard management agreement referred to makes no mention of a two-year guarantee of employment.
On or about November 21, 1988 and after receipt of the letter referred to, the plaintiff resigned his position with the Yoh Company and began his employment with CDI Company. He continued with the defendant company until September, 1989, at which time he was discharged.
Prior to that date events took place which caused the defendant to remove Mr. Strouch from his position. At first, in April, 1989 the plaintiff was reported to be doing well making "great strides." However, this information proved to be incorrect, because at a later date, in July, 1989 there were disquieting reports from the staff about Mr. Strouch. As a result two senior members of management were sent to the regional office. Following their investigation they recommended that he be fired. Despite these recommendations, Mr. Milani did not terminate him because he hoped the problems would be resolved. At this time he warned Mr. Strouch that there were reports from staff persons that he had been demeaning, berating, and down-grading them; also that his "numbers are not such that we would be handing out high praise. However, if you abuse staff . . . . you destroy their desire to achieve."
There were also reports that he showed up "hung over," joked about drinking, was profane in the office. After these complaints were communicated to the plaintiff, he agreed to alter his conduct. In July and August Mr. Pettix, an executive of CDI, spent 3-4 days per week in the regional office to get the office in order and in particular to get resumes coded using the CDI system. However, there was no progress. Particularly damaging to the plaintiff was the testimony of a staff member, Ms. Hathaway. She told of Mr. Strouch's abusiveness, profanity, his drinking, absenteeism, demeaning and racial slurs. She added that the plaintiff had not changed his bad habits after the warnings were given.
In early September two staff members resigned because of the plaintiff's conduct. Also, management received written complaints about Mr. Strouch from four staff members. These CT Page 11564 written complaints which as hearsay were not taken as proof of the facts therein stated. However, they were treated as establishing that staff members were dissatisfied with the plaintiff's treatment and were complaining.
On September 10, 1989 Mr. Pettix, at the conclusion of his time in the regional office, concluded that the situation was not redeemable, and fired the plaintiff for "lack of management control, no direction in the office, personnel problems, and productivity was at a standstill."
As already stated, the letter of November 10, 1988 incorporates as part of the agreement the management contract. The management contract states in Section 10 that CDI may terminate the agreement "for cause." It is felt that there is adequate cause present in this case.
The plaintiff's claims that he had a guarantee of employment for a period of two years is not accepted. The letter of November 10, 1980 gives him no such guarantee. Moreover, it is found that he was not promised any such guarantee. Considering his intelligence and degree of sophistication, it is difficult to conclude that he did not realize this when he received the letter, which is clear in stating that the two-year provision related only to the rate of the commission he would receive.
It may be stated also that even if the two-year guarantee had been given, it would be unavailing to the plaintiff because good and just cause has been established. "An employment contract for a definite or determinable term may be terminated by either party only for good or just cause. Good cause . . . . is defined as substantial reason, one that affords a legal excuse." Good cause or just cause substantially limits employer discretion to terminate, by requiring the employer, in all instances, to proffer a proper reason for dismissal by forbidding the employer to act arbitrarily or capriciously.Slifkin v. Condec Corporation, 13 Conn. App. 538, 549.
See 53 Am.Jur.2d — Master and Servant — Grounds for Discharge. In Section 49 it is stated:
 "To justify the discharge of an employee before the expiration of the term of employment, it is sufficient for the employer to show that the CT Page 11565 employee was guilty of a default in duty whose natural tendency was to injure the employer's business. Typical causes which justify the dismissal . . . . are neglect of duty, negligence, incompetence or inefficiency. . . ."
See also Section 51.
It is found that the defendant's conduct in discharging Mr. Strouch satisfies the prerequisites stated above.
It is further found that the allegations of fraud claimed in the second count have not been proven.
Judgment may enter in favor of the defendant.
John M. Alexander State Judge Referee