[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action, which was tried to the court, involves an alleged wrongful termination of the employment of the plaintiff, Donald C. Broadbent, by the defendants, Westport Bancorp, Inc., a holding company, and its subsidiary, the defendant, Westport Bank Trust Company (hereinafter collectively referred to as the defendant). In the first of his two count complaint, the plaintiff alleges that while employed by the defendant, he signed an "Executive Agreement" with his employer that provided, among other things, that if there was a "change in control" of his employer, and the plaintiff's employment was terminated, he would be entitled to receive a lump sum payment equal to 2.99 times his salary at that time. The change in control occurred in February, 1992, but the plaintiff contends that the defendant knew or should have know of the impending change when it terminated his employment in May, 1991, and hence had breached the Executive Agreement with him. In the second count of the complaint, the plaintiff alleges that he had been employed for a fixed term of ten years and that he could therefore be terminated only for just cause arising out of his job performance, and that he was discharged without just cause. In the answer to the complaint, the defendant agrees that it entered into an employment agreement with the plaintiff, but denies that the plaintiff is entitled to a lump sum severance payment, and that his employment was for a fixed term, thereby necessitating "cause" for the termination of CT Page 9379 his employment.
Certain facts are not in dispute between the parties, viz., that the plaintiff commenced employment with the defendant in 1971, he had risen to the position of senior vice president in charge of operations, he was earning approximately $80,000 when he was discharged in May of 1991, not because of inadequate performance, but rather as a result of downsizing by the defendant, and that his duties were taken over by a subordinate. The parties also agree that the resolution of their dispute turns on the wording and interpretation of the Executive Agreement, which is dated October 16, 1989.
"In construing an employment contract, the ordinary rules of contract interpretation apply. When construing a contract [a] court will not torture words to import ambiguity when the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings. . . . In the absence of a special meaning, the words used must be taken in their ordinary and popular sense. . . . The interpretation of a contract must be made in accordance with the terms employed in the instrument and a court cannot by that means disregard the words used by the parties or revise, add to, or create a new agreement." (Citations omitted; internal quotation marks omitted.) Slifkin v. Condec Corporation,13 Conn. App. 538, 544-45, 538 A.2d 231 (1988).
In construing the employment contract in this case, the first issue is whether the plaintiff was an employee at will who could be terminated for any reason or no reason at all. The plaintiff claims that he had a promise of ten years of employment and hence could be terminated only for just cause. The agreement in question provides in section 8 as follows: "This Agreement shall terminate on the earlier of Executive's [the plaintiff] sixty-fifth birthday or ten years after the date hereof. . . ." However, section 1 of the agreement provides that: "the employer may terminate Executive's employment at any time, subject to providing the benefits hereinafter specified . . . ."
The plaintiff testified that he interpreted this agreement as affording him a contract of employment for ten years unless he was terminated for cause, but the wording of the Executive Agreement makes it evident that the employee can be terminated at any time, and that it is not a contract for a fixed term of ten years, subject to termination only for just cause. No reason need CT Page 9380 be given for termination, although in this case, the plaintiff was the unfortunate victim of a downsizing by a company in adverse financial straits. Approximately seventy-five employees, from a staff of around two hundred fifteen, were terminated as a result of a concerted effort to reduce operating expenses, including the elimination of the plaintiff's position.
Moreover, section 3 of the agreement distinguishes between "actual termination" regardless of a change in control, termination after a change in control, and termination for "cause." The defendant agrees that the plaintiff was not terminated for cause because it provided him with the benefits set forth in section 4 of the agreement, whereas no benefits are provided either in section 4 or 5 for a termination for "cause." "Actual termination" is defined as an involuntary termination not for cause, and "cause" is defined as a failure to adequately perform one's duties or engaging in certain misconduct. This distinction between various classes of termination reinforces the defendant's contention that the plaintiff was subject to "actual termination." If the agreement with the plaintiff was not earlier terminated, either for cause, or before or after a change in control, i.e., "actual termination," then the agreement would last for ten years.
The next issue is whether the plaintiff is entitled to severance benefits under section 4 of the agreement, which he did receive, or under section 5, which he claims in this lawsuit.[1] Section 5 clearly provides that it becomes effective only after a change in control, not before. More than eight months elapsed between the time when the plaintiff's position was eliminated, and a change of control in which a number of outside investors combined to take control of the defendant. The plaintiff asserts that the defendant knew about or at least should have anticipated the change in control, and therefore that he is entitled to section 5 benefits consisting of a lump sum payment based on his salary. The clear wording of the agreement does not support the recovery of such benefits, as termination must occur after a change in control. In any event, Michael Flynn, president and chief executive officer of the defendant, testified convincingly that in May, 1991, when the plaintiff's position was eliminated, a change in control in February, 1992, was not anticipated or contemplated. The effort to raise capital began in September of 1991, at about the same time that the FDIC issued a cease and desist order regarding the ratio of capital, and culminated in a raising of equity capital CT Page 9381 by a private placement in February of 1992.
Thus, the plaintiff has not sustained his burden of proof with respect to either count of his complaint, and therefore judgment enters in favor of the defendant, with costs to be taxed by the clerk.
So Ordered.
Dated at Stamford, Connecticut, this 24th day of August, 1995.
William B. Lewis, Judge