[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter was tried before the court on two days with testimony concluding on October 1, 1996. Both counsel submitted to the court post-trial briefs in accordance with the court's order.
In his post-trial brief, the plaintiff has abandoned the third count of the complaint. At the commencement of trial, counts six, seven and eight were withdrawn. The remaining counts, i.e., one, two, four and five will be addressed by the court.
In count one, the plaintiff alleges a breach of an express CT Page 10095 contract of employment. Count two alleges a breach of an alleged contract of employment. The fourth and fifth counts allege a failure to pay a bonus in 1991 and 1992-1993.
In his post-trial brief, the plaintiff claims lost wages of $58,000 for the period July, 1993 to July, 1994, less income earned and bonus payments in the amount of $18,000, which should be doubled because of alleged willful withholding pursuant to Connecticut General Statutes § 31-72.
The court could reasonably find, from the evidence, that the plaintiff was working with First Bank, a Fortune 500 Company, in 1991, when he had his first meeting with personnel from the defendant company. He testified that he was contacted by a recruiter from defendant company in February, 1991, and was interviewed on several occasions between February, 1991 to May, 1991, when he left his employment to join the defendant.
He was hired by the defendant with a base salary of $58,000. There was never a written a contract of employment.
Both parties agree that a bonus plan of $12,000 was also a part of the employment.
The court can also find from the evidence that job security was never discussed.
From June, 1991 to July 26, 1993, a series of meetings were held between the plaintiff wherein cost control on the catalog and purchase order procedures were discussed. There was a failure in submitting purchase orders and, finally, when it did come in, it was larger than the defendant had anticipated.
The defendant was forced to issue its catalog with first class postage instead of third class postage because the plaintiff failed to prepare the quarterly newsletter on time. The sponsor relationships suffered under the leadership of the plaintiff and he was removed from almost all sponsor exposure.
Further, although the plaintiff generated new customer leads, the quality of the new customers was sub-par. In short, the defendant was greatly disappointed in the performance of the plaintiff.
It was this overall job performance which prompted the CT Page 10096 defendant to lose his job.
There was no evidence produced at trial that the term of employment was definite. There was no evidence indicating that either party could not terminate the relationships at any time. Further, there was no evidence in which the court could find malice, ill will or discrimination on the part of the defendant.
The agreement between the parties clearly illustrates that the employment was "at will" and not for a definite period of time. The evidence does not indicate either an express or implied contract of employment for a specific period of time.
The general rule in Connecticut is that an employer may discharge an at-will employee at any time and that the employee may leave at any time. Carbone v. Atlantic Richfield Co.,204 Conn. 460 (1987); Slifkin v. Condec Corporation, 13 Conn. App. 538
(1988).
The at-will relationship is characterized by the absence of any employment contract and lacks of a definite term of employment.
There has been, however, a slow erosion of this traditional rule because of continuing judicial intervention. Three exceptions have been grafted to the rule.
The three generally recognized exceptions are (1) terminations in violation of public policy, (2) terminations in violation of the implied covenant of good faith and fair dealing, and (3) termination in violation of an implied contract.
There is no question that none of the public policy exceptions apply here. There usually must be an "improper reason for dismissal . . . whose impropriety is derived from some important violation of public policy." See Sheets v. Teddy'sFrosted Foods, Inc., 179 Conn. 471, 475 (1980).
The Connecticut Supreme Court first recognized the existence of an implied covenant of good faith and fair dealing in Magnanv. Anaconda Industries, Inc., 193 Conn. 558, 572 (1994).
The court stressed that the absence of good cause to discharge an employee does not alone give rise to an enforceable claim for breach of a covenant of good faith and fair dealing. CT Page 10097 The court stated that:
 Although we endorse the applicability of the good faith and fair dealing principle to employment contracts, its essence is the fulfillment of the reasonable expectations of the parties. Where employment is clearly terminable at will, a party cannot ordinarily be deemed to lack good faith in exercising this contractual right.
The implied covenant of good faith and fair dealing, therefore, does not enlarge the circumstances under which an at-will employee may successfully challenge his or her dismissal beyond the situation where the reason for discharge involves impropriety derived from some important violation of public policy. Thus, the cause of action in contract for discharge in violation of an implied covenant of good faith and fair dealing is coterminous with and extends no further than the cause of action for wrongful discharge in tort. This exception clearly does not apply here.
Finally, the Connecticut Supreme Court has ruled that statements contained in an employee relations manual or handbook may provide the basis for the finding of an expressed or implied employment contract, thereby transforming the relationship between employer and employee from one terminable at will to one terminable only for cause. For instance, in Finley v. Aetna Life Casualty Company, 202 Conn. 190, 206 (1987) an employee manual stated that "[i]t is Company policy to terminate any employee who cannot perform satisfactorily, whose attendance is poor, or who is otherwise unsuited to the job." In this situation, the Connecticut Supreme Court ruled that whether the employer's personnel manual gave rise to an express contract was a question of fact to be determined by the jury.
The elements for an exception under this final category are clearly lacking.
Accordingly, the court finds all issues in favor of the defendant and judgment may so enter.
Mihalakos, J. CT Page 10098