[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S SECOND MOTION TO STRIKE
The Court wrote a lengthy memorandum of decision on the first motion to strike filed by the plaintiff against the first amended complaint. The plaintiff has now filed a second amended complaint and the defendant has filed another motion to strike directed at several counts. In this case it would have been helpful if a request to revise had been filed so that the issues before the court could have been narrowed. This is especially so in light of the fact that in addressing motions to strike the court muse give the pleading of the non-moving party that reading which is most favorable. Amodio v. Cunningham, 182 Conn. 80, 82 (1980)
 1.
The motion to strike is directed at the first count of the second amended complaint and the plaintiff, in her brief, characterizes the claim made in this count as one made for breach of contract. The plaintiff alleges that the defendant offered her CT Page 9363 a managerial position and agreed to pay her a salary and bonus and further agreed to provide insurance, pension, and profit sharing retirement benefits. The plaintiff states she accepted this offer on June 5, 1995. In April 1996 the plaintiff says she was told by her employer that she would earn her bonus if certain company objectives were met. These objectives as alleged are quite vague — "develop and coordinate all promotional activities", "ensure maximum sales volume at efficient costs" (Par. 4 of Second Amended Complaint). In September 1996 the plaintiff alleges that she was told she had earned her bonus. The plaintiff further alleges that after she began employment, she was told that as of March 1, 1996 the defendant employer would start making contributions to a profit sharing and pension plan in the plaintiff's behalf. The first count contains no allegation that the plaintiff was hired for a definite term and interestingly in paragraph 2 she describes herself as an "at will" employee. In October 1996 the plaintiff was terminated.
 (a)
Based on these allegations, the plaintiff sued in the first count for what she describes as breach of contract. The court will attempt to first discuss the general principles of law applicable to employment contracts. In the absence of an agreement to work for a specific term of time an employment contract is an "at will" contract, Henkel v. Education ResearchCouncil of America 344 N.E.2d 118, 119 (Oh, 1976). Slifken v.Condec Corp., 13 Conn. App. 538, 548-549 (1988). Under such an arrangement the employer can discharge the worker at any time for any reason as long as in so doing there is no violation of public policy and the employee can quit the job at any time, Carbone v.Atlantic Richfield Co., 204 Conn. 460 (1987). The general rule is that an annual salary term in such a contract does not create a contract of employment for a determinable term, Henkel v.Education Research Council of America, supra, Paris v. NESavings, 11 Conn. L. Rptr. 575, 577 (1994).
The fact that here the plaintiff was offered a salary would certainly not turn this contract of employment, without more, into an agreement that the plaintiff could only be fired for cause. The additional fact that the plaintiff was offered a bonus and pension and profit sharing benefits should also make no difference. These items are merely a form of deferred compensation — salary broadly defined — and would probably be regarded as "wages" under state statutes monitoring wages and CT Page 9364 their fair payment, Cook v. Alexander Alexander of Conn,40 Conn. Sup. 246, 248 (1985). The point is that there is no allegation that the plaintiff was hired for a definite term or a term of employment somehow made determinable by her method of compensation whether as fixed salary, a bonus or pension or profit sharing payments.
To hold that the promise of a bonus or profit sharing or pension payment by the employer somehow turns an at will employment contract into one only terminable for cause would simply discourage employers from giving marginal, economically vulnerable workers bonus or pension plans for fear of destroying the at will status of the employment relationship.
As noted in the second amended complaint the plaintiff has added new factual allegations that suggest that some time after she began work her bonus had vested — she was told she had "earned" her bonus and also that the employer had already started making payments into her profit sharing plan on a date before she was actually fired. It is difficult to understand how or why these added allegations would change the at will character of the employment contract since they do not supply the necessary condition to do so — an agreement to hire for a specific term. The remedy for failure to pay an "earned" bonus or to recover accrued payments made by an employer into a profit sharing or pension plan would lie through the wage reimbursement statutes, §§ 31-70 et seq. But the existence of a remedy under those statutes does not change the nature of the underlying employment contract just as the availability of a remedy under those statutes does not depend on the nature of the underlying employment contract as long as the claimed compensation has been earned.
 (b)
Relying on the just mentioned allegations added to the second amended complaint, the plaintiff appears to try to avoid this formal contract analysis by making an argument in promissory estoppel. Given the pleadings their most favorable reading the court will assume such a claim is being made and is properly before the court. It has been said that: "under this theory the employee argues that, even if there was not an enforceable contract, oral representations by the employer may be reasonably construed by an employee as the basis for the contractual promise", Labor Employment in Connecticut, Hirsch, § 13-6 (a) CT Page 9365 (IV) at page 13-25. In D'Ulise- Cupo v. Bd. Of Directors ofNotre Dame High School, 206, 213 (1987) the court adopted the Restatement definition of the requirements of promissory estoppel and said:
 ". . . . Second 90 of the Restatement Second (Contracts) states that under the doctrine of promissory estoppel `a promise which the promisor should reasonably expect to induce action or forebearance on the part of the promisee or a third person and which does induce such action or forebearance is binding, if injustice can be avoided only be enforcement of the promise'. A fundamental element of promissory estoppel, therefore, is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance. Thus, a promisor is not liable to a promisee who has relied on a promise, if judged by an objective standard, he (sic) had no reason to expect any reliance at all. . . ."
Also see Finley v. Aetna Life Casualty, 202 Conn. 190, 205
(1987).
At the time the plaintiff accepted the offer of employment a promissory estoppel argument could not be made out under the allegations of the present complaint. First the vague references to a bonus and how it would be earned and the profit sharing and pension arrangement were not sufficiently promissory and more importantly sufficiently definite, cf D'Ulise- Cupo v. Bd.Of Directors of Notre Dame High School, 202 Conn. 206, 214 (1987) (Court reviews a motion to strike)
Perhaps more importantly the mere fact that a bonus or profit sharing and pension payments were promised as part of the initial offer of employment cannot turn the employment arrangement into one that is only terminable for cause, thus providing the basis for the damage claim in this count. How would promises of these types of deferred compensation create a situation any different from the ordinary case where a worker, not hired for a definite term, is told he or she would be earning a certain salary — once the worker is fired the right to future salary is lost but how can that be made the basis of a promissory estoppel claim? What's the detriment — that the employee could not work at the job any more? That would be circular reasoning: Or to put it another way, given the nature of the at-will doctrine, how could it be held that an employer would expect that a worker would rely on a CT Page 9366 promise of future remuneration and thus be estopped from firing that worker thereby cutting off the possibility of such remuneration — this reasoning would negate the employee at will doctrine.
But there is another aspect to the promissory estoppel argument raised by allegations in the second amended complaint that after employment began, the defendant employer told the plaintiff she had "earned" her bonus and that payments would be made into a profit sharing plan for her benefit commencing on a date that proved to be several months before her discharge. The court in its previous decision did not address the bearing of these factual allegations because they not only were not made but were not made in the context of a promissory estoppel argument.
Giving the allegations of the pleadings their most favorable reading the court cannot say that a promissory estoppel argument is not presented. The plaintiff does state the "plaintiff justifiably relied on the defendant's representations and carried out her employment duties" (par. 8). Again a request to revise would have been helpful here and further discovery may indicate at the summary judgment stage that a promissory estoppel claim is not viable but the court is reluctant to grant a motion to strike on the state of these pleadings. The pleadings can be construed as alleging that the plaintiff continued her employment based upon the assurance she was accruing and had accrued certain benefits. The fact that the plaintiff has a statutory remedy for wrongfully withheld compensation under § 31-72 does not necessarily preclude a separate common law promissory estoppel remedy.
Furthermore, the court is of course not bound by off hand remarks it made in its earlier opinion regarding the effect of the existence of a statutory remedy on causes of action unrelated to promissory estoppel and raising separate policy and analytical considerations.
This issue has cased the court some difficulty, however. There is broad language in Atkins v. Bridgeport Hydraulic Co.,5 Conn. App. 643, 648 (1985) which will be quoted later in this opinion (fourth count) which generally says cases establishing a remedy in tort or contract for employees discharged in violation of public policy rely on the fact that no statutory remedy exists to correct the particular wrong brought to the court's attention. The implication of course being if such a remedy existed no tort CT Page 9367 or contract remedy would be available. Such observations become critical in cases like Atkins where there is an issue of failure to exhaust administrative remedies — as to the statutory claim. Here the problem is somewhat different despite the broad remarks the court made in its first decision in this matter. There is no exhaustion problem; § 31-72 appears to create a direct independent statutory right to sue for the employee deprived of earned or accrued benefits. The common law promissory estoppel remedy is not being "created" or "recognized" to provide a remedy for a social ill not otherwise dealt with by statute. That doctrine has existed in one form or another for centuries and why should a litigant be deprived of a remedy at common law even if there is a statutory remedy, absent any exhaustion of administrative remedy problems?
The parties have not directly addressed these issues or the factor that would be controlling — how would the existence of the promissory estoppel remedy in any way interfere with the viability of the statutory remedy set forth in § 31-71 (e) and §31-72.
In any event the motion to strike the first count is denied.
 2.
The court will now address the motion to strike as it relates to the fourth count — the claim is made that in firing her the defendant breached the covenant of good faith and fair dealing (par. 19). The court rejected this claim insofar as there was only a claim that a bonus and profit sharing and pension payments had been promised at commencement of employment. See first decision at pp. 24-26, cf. Carbone v. Atlantic Richfield Co., supra at 204 Conn. 460, 470-471. But as previously noted here, the complaint has been amended to allege that certain compensation had in fact been earned or had accrued prior to termination. In this regard, in dicta, the court in Magnan v.Anaconda Industries, Inc., 193 Conn. 558, 569 (1984) noted that:
 "The Massachusetts courts have applied the good faith and fair dealing doctrine to find a breach of contract where the discharge was for a reason contrary to public policy, as in Sheets, and also despite the absence of any such improper motivation, where the termination has deprived the employee of benefits attributed to Past services." (Emphasis added). CT Page 9368
This dicta is not binding and its adoption as a new principle to protect worker rights is unnecessary and would add to the confusion in this area since there are already adequate statutory remedies to rectify any wrong involving the illegal withholding of earned compensation.[1] The court cannot say whether Massachusetts, for example, gives statutory remedies to its workers concerning these problems similar to that afforded our workers.
The court will strike the fourth count.
 3.
In the third count, the plaintiff repeats the factual allegations of the first count, and adds factual allegations of the second count to the effect that the defendant discharged the plaintiff to avoid paying her an earned bonus and further failed to make promised contributions to her profit sharing and pension plans all in violation of § 31-71 (e) of the General Statutes. The third count goes on to allege that the plaintiff's discharge under these circumstances violated § 31-71 (e) which forbids an employer from withholding-or diverting a worker's wages.
The plaintiff simply claims by wrongfully terminating her there was a "violation of Sec. 31-71 (e)." In its brief the plaintiff says that she does not intend to say "that the literal act of discharging her was a violation of said statute, instead she purports that the result of the discharge, i.e., the nonpayment of wages due constitutes the violation." And giving the pleadings their most favorable reading, the allegation is made that the bonus has been earned and profit sharing and pension payments had accrued.
But the complaint explicitly says the discharge is a violation of § 31-71 (e) — no matter what figurative overlay the plaintiff now attempts to give her claim Amodio v. Cunningham, supra, cannot require that ordinary meanings of the language can be ignored by representations outside the pleadings. Section31-71 (e) has nothing to do with prohibiting the discharge of workers. The statutory scheme of which that section is a part merely provides a mechanism for improperly withheld wages. The defendant has a right to know the nature of the claim made against it in this count — Is this a claim under the statutory scheme? Are twice the amount of the "wages being claim (§ 31-72)? CT Page 9369 Is reinstatement being claimed under the statute? What is the damage claim in reference to this count — is it for future lost wages? §§ 31-71 (e) and 31-72 are concerned with past withheld wages.
The court will strike this count as presently framed.
 4.
In the second count, the plaintiff makes a so-called Sheets
argument. She alleges that her firing was in violation of the public policy of the state in that she alleges she was discharged by the defendant to avoid paying her earned bonus and because the defendant failed to make promised contributions to her profit sharing and pension plans. In granting the motion to strike this count, the court relies on its discussion concerning this issue in its previous decision. Insofar as the plaintiff now alleges that the defendant has avoided paying her earned or accrued benefits, which was not previously alleged, the court concludes that this would not create a Sheets claim.
The case of Atkins v. Bridgeport Hydraulic Co.,5 Conn. App. 743 (1985) leaves the court little discretion. There the Atkins
court said:
 "The cases which have established a tort or contract remedy for employees discharged for reasons violative of public policy have relied upon the fact that employee was otherwise without remedy and that permitting the discharge to go unredressed would leave a valuable social policy to go unvindicated."
Id. at page 648.
Atkins relied on Wehr v. Burroughs Corp., 438 F. Sup. 1052
(E.D. Pa., 1977) which in reviewing the public policy exception to employment at will contracts said that:
 "It is clear then that the whole rationale undergirding the public policy exception [to termination at will] is the vindication or the protection of certain strong policies of the community, if these policies or goals are preserved by other remedies, then the public is sufficiently served. Therefore, application of the public policy exception requires two factors: (1) that the discharge violates some CT Page 9370 well established public policy; and (2) that there be no remedy to protect the interest of the aggrieved employee or society."
Id., page 1055.
Section 31-72 provides for extensive and far reaching remedies for improper withholding of compensation; therefore, in the context of the factual allegations made here, a wrongful discharge claim based on an alleged violation of public policy for failure to pay or recognize claims for earned or accrued benefits should not be permitted. The plaintiff has cited several cases for the proposition that wrongful discharge claims underSheets should not be stricken where the court determines that the statutory remedy is inadequate. The plaintiff has cited Cantaverov. Horizon Meat Seafood Dist., 19 Conn. L. Rptr. 333 (1997); Wall v. Wassau Ins. Co., 12 Conn. L. Rptr. 335 (1994); Mirto v.Laidlaw Transit, Inc., 9 Conn. L. Rptr. 19 (1993); MacLean v.Northeast Province, 7 CSCR 471 (1992). Here it is argued the statutory remedy is inadequate because, in this wrongful termination claim, the plaintiff seeks compensatory damages, attorney's fees, exemplary damages and damages for humiliation, embarrassment and mental anguish. But even if this position — in apparent contradiction of Atkins — is accepted the court cannot conclude the remedy provided by § 31-72 is "inadequate." That statute provides that the wronged employee may recover twice the amount of the wages held back and reasonable attorney's fees. The plaintiff claims she was fired so that the employer would not have to pay her compensation that had been earned; this she claims violates public policy as expressed in § 31-72 of the General Statutes. But § 31-72 seeks to provide a remedy for that very wrong. This is not a case like Mirto were the plaintiff employee sued the former employer under § 31-51q for a violation of free speech rights on the job and also made a Sheets claim relating to the substance of the speech he engaged in — claims that the employer was not providing reasonable and desirable school bus transportation as required by § 10-220 of the General Statutes. The court of course refused to strike the Sheets claims because different public policy considerations were at stake. Also see MacLean v. Northeast Province, supra.
In Wall v. Wassau Ins. Co., supra, the plaintiff was allegedly constructively discharged for performing jury duty; the court refused to strike a constructive discharge claim based on aSheets public policy argument even though a partial remedy was CT Page 9371 available under § 51-247 (a) which permits recovery of up to ten weeks of wages lost during jury service. The public policy sought to be vindicated is one that protects employees who serve as jurors from retaliation — citizens must be encouraged to serve as jurors. Ten weeks lost wages was inadequate to address the loss of his job which the plaintiff claimed in Wall. Again, in this case the public policy expressed in the statute is the recovery of earned wages, the statute gives the wronged worker double the lost compensation and pays his or her lawyer for making the claim (§ 31-72). This is a specific remedy for the very wrong being alleged.
In this case the worker is not being protected in his or her right, for example, under state and/or federal law to engage in union activity or file worker's compensation claims — statutes which themselves provide no remedy for the wrong suffered by loss of one's job for exercising rights specifically granted by the legislature. See Sheets v. Teddy's Frosted Foods, Inc.,179 Conn. 471 at page 476 (1980).
As said in Labor Employment in Connecticut, Hirsch at § 13-6 (a)(i) page 13-19.2,
 "A claim of common law wrongful discharge is available to employees only if they are otherwise without a remedy. Thus, if the employee claims that the conduct of his or her employer violated a statute which itself provides for a remedy, the employee cannot forego this statutory remedy in favor of a common law claim of wrongful discharge."
As Sheets itself notes, a "line" must be drawn "between claims that genuinely involve the mandates of public policy and are actionable, and ordinary disputes between employee and employer that are not." Id. 179 Conn. at p. 477. Can you imagine the flood of litigation that would arise where an employee is fired in an otherwise employment at will relationship but claims back pay or vacation time that is owing? Section 31-72 exists to protect worker rights in this area and its remedy is adequate.
The second count is stricken.
 5.
The defendant's motion is not directed at the fifth count. CT Page 9372
 6.
In light of the foregoing, its previous decision at pp. 28, 29, and the reasoning set forth in defendant's 1/21/99 brief, the court also strikes the claim for exemplary damages. There is no allegation of wanton or outrageous conduct or evil motive. L.F.Pace Sons, Inc. v. Travelers Ins. Co., 9 Conn. App. 30, 48
(1986) There is no allegation in the first count, for example, that the defendant made intentional misrepresentations to the plaintiff to induce her to continue working for the defendant and so acted with that specific intent in mind. That might constitute the wanton or malicious action or reckless in difference to other's rights referred to in L.F. Pace Sons, but it is not alleged here.
 . . . . .
All counts except the first and fifth are stricken as is the claim for exemplary damages.
Corradino, J.