MD DRILLING AND BLASTING, INC. *v.* MLS
CONSTRUCTION, LLC
(AC 26330)

Dranginis, Bishop and DiPentima, Js.

Argued December 5, 2005—officially released January 31, 2006

*James F. Cirillo, Jr.,* for the appellant (defendant).

*Scott S. Orenstein,* for the appellee (plaintiff).

### Opinion

DiPENTIMA, J. The defendant, MLS Construction, LLC, appeals from the judgment of the trial court concluding that the defendant breached the contract between the defendant and the plaintiff, MD Drilling & Blasting, Inc., and awarding damages, interest and attorney's fees. On appeal, the defendant claims that the court improperly (1) found that a contract existed between the parties and (2) awarded contract interest and attorney's fees. We affirm the judgment of the trial court.

The court's memorandum of decision sets forth the following facts relevant to the defendant's appeal. The owner of a vacant piece of property in East Haven retained the defendant to do excavation work, and, in February or March, 2003, the defendant asked the plaintiff to perform the necessary rock drilling and blasting for the project. In 2002, the plaintiff had entered into a written contract with the defendant to do similar work on a job in North Branford, for which the plaintiff had not been paid fully. The plaintiff agreed to perform the work in East Haven provided that the defendant make a substantial payment on the outstanding balance owed for the work done in North Branford. On March 31, 2003, the defendant agreed to the condition and tendered a check to the plaintiff for $15,000.

For the East Haven agreement, the parties adopted the same terms and conditions contained in the North Branford written agreement, with a minor price reduction made orally during the course of the North Branford job.[1] Under the terms of the oral agreement, the plaintiff began work in East Haven on the morning of April 1, 2003. On April 15, 2003, the plaintiff was notified by its bank that the defendant had stopped payment on the $15,000 check on April 11. After its unsuccessful attempts to locate the defendant for an explanation of the stop payment, the plaintiff ceased work on April 18, 2003. Despite the defendant's request that the plaintiff continue work on the East Haven project, the plaintiff advised the defendant that it would not resume drilling and blasting without some payment. Receiving none, the plaintiff did not return to the East Haven project.

Thereafter, the plaintiff filed an amended, six count complaint, claiming, inter alia, breach of contract and unjust enrichment.[2] After a trial to the court, the court filed its memorandum of decision, concluding that the plaintiff had proven its claims of breach of contract and unjust enrichment, and was entitled to damages in the amount of $26,882.83 plus interest at 2 percent per month from May 25, 2003, to the date of judgment, as well as costs, expenses and attorney's fees. The court withheld final judgment to allow the plaintiff "to file a computation of interest, including a per diem rate, and

---

[1] The written contract for the North Branford job had included a price of $2.90 per cubic yard, but, during the course of the job, the price had been reduced orally to $2.75 per cubic yard.

[2] The remaining four counts of the amended complaint alleged fraud and intentional misrepresentation, wanton and reckless conduct, statutory theft and negligent misrepresentation. The defendant pleaded two special defenses, claiming that the plaintiff did not complete the job in a workman-like manner and charged for services it did not perform. The court found in favor of the plaintiff on the breach of contract and unjust enrichment counts, and on the special defenses. This appeal challenges the court's finding on the breach of contract count only.

an affidavit with respect to costs and expenses, and attorney's fees." After reviewing the submissions, the court conducted a subsequent hearing, filed a supplemental memorandum of decision and rendered judgment on January 24, 2005, awarding a total of $88,181.09 to the plaintiff. This appeal followed.

We begin by setting forth the applicable standard of review. "The existence of a contract is a question of fact to be determined by the trier on the basis of all of the evidence. . . . On appeal, our review is limited to a determination of whether the trier's findings are clearly erroneous. . . . This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Citations omitted; internal quotation marks omitted.) *Fortier* v. *Newington Group, Inc.*, 30 Conn. App. 505, 509, 620 A.2d 1321, cert. denied, 225 Conn. 922, 625 A.2d 823 (1993).

The defendant first argues that the court improperly found that a contract existed between the parties. Specifically, the defendant alleges that there was no offer and acceptance between the parties because the plaintiff revoked its offer, and there was no meeting of the minds. We disagree. "It is a fundamental principle of contract law that the existence and terms of a contract are to be determined from the intent of the parties. . . . The parties' intentions manifested by their acts and words are essential to the court's determination of whether a contract was entered into and what its terms were. . . . Whether the parties intended to be bound

without signing a formal written document is an inference of fact for the trial court that we will not review unless we find that its conclusion is unreasonable." (Citations omitted.) *Steeltech Building Products, Inc.* v. *Edward Sutt Associates, Inc.*, 18 Conn. App. 469, 471–72, 559 A.2d 228 (1989).

The following additional facts educed from the record are relevant to the disposition of the defendant's appeal. On the afternoon of April 1, 2003, the same day that it had begun drilling and blasting for the East Haven project, the plaintiff faxed the defendant its standard form of agreement. The agreement was intended to be identical to the North Branford agreement but reflected the orally agreed upon reduction to $2.75 per cubic yard.[3] The plaintiff had not signed the written agreement, and the defendant testified that it never received it. The defendant argues that the unsigned written agreement that the plaintiff faxed on April 1, 2003, effectively revoked the original offer and, thus, invalidated the oral contract.

The defendant's revocation argument was not raised or preserved, and the defendant filed no motion for articulation. We note, however, that because the court properly found that the defendant had accepted the offer, as a matter of law there could be no revocation. It is a fundamental principle of contract law that "[r]evocation of an offer in order to be effectual must be *received* by the offeree and *before* he has exercised his power of creating a contract by acceptance of the offer." (Emphasis added; internal quotation marks omitted.) *Lyon* v. *Adgraphics, Inc.*, 14 Conn. App. 252, 255, 540

---

[3] The agreement also contained minor differences, such as statements that the plaintiff would provide fuel for its own equipment and conduct test drilling as directed by the contractor at $200 per hour. In addition, the faxed agreement stated that the contractor will pay interest at a rate of 1 1/2 percent per month on past due balances, as opposed to the 2 percent stated in the North Branford agreement.

A.2d 398, cert. denied, 208 Conn. 808, 545 A.2d 1103 (1988); see also *L. & E. Wertheimer, Inc.* v. *Wehle-Hartford Co.*, 126 Conn. 30, 35, 9 A.2d 279 (1939); 1 A. Corbin, Contracts (Rev. Ed. 1993) § 2.18, p. 215 ("[a]fter an acceptance has become effective, there is no power in either party to revoke or withdraw"); 1 Restatement (Second), Contracts § 42, comment (c), p. 114 (1981) ("[o]nce the offeree has exercised his power to create a contract by accepting the offer, a purported revocation is ineffective as such"). Thus, even if the plaintiff had attempted to revoke its offer, which required a partial payment for the balance owed on the North Branford job, the fact that the defendant had accepted the offer by tendering the check terminated any possible revocation.[4] The oral contract was binding.

Additionally, the defendant avers that there was no meeting of the minds between the parties and that therefore no valid contract existed. We disagree. "In order for an enforceable contract to exist, the court must find that the parties' minds had truly met. . . . If there has been a misunderstanding between the parties, or a misapprehension by one or both so that their minds have never met, no contract has been entered into by them and the court will not make for them a contract which they themselves did not make." (Citations omitted; internal quotation marks omitted.) *Fortier* v. *Newington Group, Inc.*, supra, 30 Conn. App. 510.

The defendant argues that the differences between the oral contract and the contract that the plaintiff faxed on April 1, 2003, were material and that therefore there was no meeting of the minds because the parties were operating under the terms of two distinct contracts.

---

[4] We note also that the defendant claimed never to have received the faxed contract. Even if the written agreement had been sufficient to revoke the plaintiff's offer, the revocation would have been ineffective still because an offeree must be aware of the revocation in order for it to take effect. See *Lyon* v. *Adgraphics, Inc.*, supra, 14 Conn. App. 255.

Our review of the entire record, however, convinces us that the court's finding that the parties both believed they were operating under the North Branford contract is supported by the evidence and is not clearly erroneous. To the extent that the parties' testimony differed, the court relied on the credibility of the witnesses to determine the terms and conditions of the contract. The court explicitly found the plaintiff's witness to be credible and the defendant's principal witness to be incredible. "This court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . In a case that is tried to the court . . . the judge is the sole arbiter of the credibility of witnesses, and the weight to be given to their specific testimony." (Internal quotation marks omitted.) *L & R Realty* v. *Connecticut National Bank*, 53 Conn. App. 524, 535, 732 A.2d 181, cert. denied, 250 Conn. 901, 734 A.2d 984 (1999). The court reasonably concluded that both parties were operating under the terms of the enforceable oral contract and that there was a valid meeting of the minds.[5]

Last, the defendant argues that the court improperly awarded contractual interest and attorney's fees. In support of its argument, the defendant relies on the "American rule." "The general rule of law known as the American rule is that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory

---

[5] The defendant asserts that the unsigned standard contract that the plaintiff faxed and the defendant did not receive varied from the oral contract in "materially significant terms." On the contrary, we note that even if the plaintiff had been operating under the terms of the written contract, the materially significant terms were the same as those in the oral contract. Cf. *L & R Realty* v. *Connecticut National Bank*, supra, 53 Conn. App. 536–38 (concluding that agreement unenforceable because parties had not agreed on essential terms).

exception." (Internal quotation marks omitted.) *Rizzo Pool Co.* v. *Del Grosso*, 240 Conn. 58, 72, 689 A.2d 1097 (1997). The North Branford contract, under which the parties operated for the East Haven contract, contains a specific provision regarding attorney's fees, costs and expenses, as well as interest for past due balances.[6] In light of our conclusions as to the existence and terms of the contract between the parties, the defendant's argument as to interest and attorney's fees fails.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] The North Branford agreement contains the following language: "Contractor . . . will pay interest at a rate of two percent per month on past due balances. Any fees, costs or expenses, including legal fees, incurred by the Subcontractor associated with receipt of payment shall be paid by the Contractor."