NORMA I. CRUZ *v.* VISUAL PERCEPTIONS,
LLC, ET AL.
(AC 33010)

Gruendel, Lavine and Schaller, Js.

Argued February 7—officially released June 19, 2012

*Richard D. Carella*, with whom was *David R. Makar-
ewicz*, for the appellants (defendants).

*Opinion*

GRUENDEL, J. The defendants, Visual Perceptions,
LLC, and Robert W. Aube, Jr.,[1] appeal from the judgment
of the trial court in favor of the plaintiff, Norma I.
Cruz. On appeal, the defendants argue that the court
improperly (1) determined that the parties entered into
an employment contract for a definite term and that
the plaintiff's employment could therefore only be ter-
minated for just cause and (2) awarded the plaintiff

---

[1] At all relevant times, Aube, a doctor of optometry, was the principal of
Visual Perceptions, LLC. For the sake of clarity, we refer to Visual Percep-
tions, LLC, individually as the defendant and to Aube by name, or to both
parties collectively as the defendants.

consequential damages as a result of medical expenses she incurred. We affirm the judgment of the trial court.

The record reveals the following factual and procedural history relevant to the defendants' claims. The plaintiff was hired as a laboratory manager by the defendant in February, 2006. On February 2, 2006, the plaintiff and Aube signed a document that included the plaintiff's rate of compensation, commission opportunities, benefits and work schedule. Thereafter, on April 6, 2006, the plaintiff and Aube signed a second document that revised the terms of the plaintiff's employment, providing for a raise in her salary.

In February, 2007, the plaintiff provided Aube with a handwritten list of updated terms of her employment wherein she requested another raise. On March 1, 2007, the plaintiff and Aube signed a third document, stating "[t]his will cover the 36 month period starting April 1, 2007 and ending March 31, 2010." Aube terminated the plaintiff's employment at Visual Perceptions, LLC, on October 16, 2008, and litigation followed.

On January 6, 2010, the plaintiff filed a revised amended complaint.[2] Count one alleged that the March 1, 2007 document constituted an employment contract between the plaintiff and the defendant for a fixed term of thirty-six months, and that her termination breached that contract. Counts two and three sought an accounting and payment of commissions for the term of the alleged employment contract against the defendant and Aube, respectively. The defendants filed an answer denying the existence of an employment contract and claiming, by way of special defenses, rescission, payment, and accord and satisfaction as to all counts of

[2] The revised amended complaint contains six counts. Counts four and five were withdrawn by the plaintiff following argument held on July 6, 2010. Count six was dismissed by the court at the conclusion of the plaintiff's case-in-chief.

the revised amended complaint. The defendants also claimed that Aube could not be liable personally pursuant to General Statutes § 34-134 as to count three. The defendant asserted a counterclaim against the plaintiff for breach of contract, breach of the covenant of good faith and fair dealing, and statutory theft pursuant to General Statutes § 52-564.

The matter was tried to the court on March 23 and April 27, 2010. The plaintiff and the defendants submitted posttrial briefs on June 25, 2010, and final argument was held before the court on July 6, 2010. In its memorandum of decision, the court first determined that the March 1, 2007 document constituted a contract of employment for a definite term and was terminable only for good or just cause. The court then determined that because the defendants did not present evidence to support a finding of good or just cause to terminate the plaintiff's employment, the plaintiff was discharged in violation of the contract. The court found that the plaintiff was entitled to damages from the date of her termination through the end date of the term of the contract. On December 6, 2010, the court awarded the plaintiff $60,964.11, representing the plaintiff's lost wages, less unemployment compensation, with the addition of medical expenses incurred due to a loss of health insurance coverage and an underpaid bonus. This appeal followed. Additional factual and procedural history will be set forth as necessary.

I

The defendants argue that the March 1, 2007 document is not a guaranteed employment contract for a definite term. They claim that, absent a clear and definite promise of three years of guaranteed employment, it was error for the court to find that it was an employment contract for a definite term of thirty-six months

and that the plaintiff's employment could only be terminated for cause. We disagree.

"The existence of a contract is a question of fact to be determined by the trier on the basis of all of the evidence. . . . On appeal, our review is limited to a determination of whether the trier's findings are clearly erroneous. . . . This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Internal quotation marks omitted.) *MD Drilling & Blasting, Inc.* v. *MLS Construction, LLC*, 93 Conn. App. 451, 454, 889 A.2d 850 (2006).

"When, as here, there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . . Accordingly, our review is plenary. . . . The reviewing court must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record." (Citation omitted; internal quotation marks omitted.) *Genua* v. *Logan*, 118 Conn. App. 270, 273–74, 982 A.2d 1125 (2009).

A

We first address the defendants' claim that the court improperly determined that the March 1, 2007 document was an employment contract for a definite term. The court found that the document explicitly stated the duration of the plaintiff's employment, was definite and certain as to its terms and requirements, and thus was

a valid and binding employment contract for a definite term.

Employment agreements are interpreted as any contract. *Slifkin* v. *Condec Corp.*, 13 Conn. App. 538, 544, 538 A.2d 231 (1988). "The rules governing contract formation are well settled. To form a valid and binding contract in Connecticut, there must be a mutual understanding of the terms that are definite and certain between the parties. . . . [A]n agreement must be definite and certain as to its terms and requirements. . . . A contract requires a clear and definite promise." (Citation omitted; internal quotation marks omitted.) *Geary* v. *Wentworth Laboratories, Inc.*, 60 Conn. App. 622, 627, 760 A.2d 969 (2000). "Certain material terms such as the duration, salary, fringe benefits and other conditions of employment are deemed essential to an employment contract." Id., 628.

In reviewing the court's finding that the employment contract was one for a definite term, it is helpful to distinguish certain lower court decisions relied on by the defendants. The defendants point to three Superior Court decisions to support their proposition that an agreement, even one including a term of months or years, should not be treated as a contract for a definite term. See *Ward* v. *Distinctive Directories, LLC*, Superior Court, judicial district of Hartford, Docket No. CV-04-4005440-S (May 25, 2005) (39 Conn. L. Rptr. 391); *Strouch* v. *CDI Corporation-Northeast*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV-90-0386501-S (November 18, 1994), aff'd, 40 Conn. App. 928, 670 A.2d 341 (1996); *Paris* v. *Northeast Savings F.A.*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV-91-0398144-S (June 1, 1994) (11 Conn. L. Rptr. 575). In each of these cases, a contract provision linked the employee's compensation to a certain time period. In *Ward* v. *Distinctive Directories, LLC*, supra, 39 Conn.

L. Rptr. 391, the employment contract guaranteed a minimum salary of $4583.33 for the first six months of employment. In *Strouch* v. *CDI Corporation-Northeast,* supra, the employment contract provided for a starting salary of $42,000 per year and guaranteed a "minimum commission of $18,000 for [the] first two years of employment." In *Paris* v. *Northeast Savings F.A.,* supra, 11 Conn. L. Rptr. 576, the terms of the employment contract provided for a base salary of $75,000 for a six month period plus incentives and commissions, which would be reduced after the first six months. The courts held that those terms did not create agreements for guaranteed employment for the time periods specified. For example, in *Ward* v. *Distinctive Directories, LLC,* supra, 39 Conn. L. Rptr. 392, the court noted that the reference to the first six months of employment "related to the very specific terms set forth for income, as opposed to an agreement for a definite term." The promise, therefore, was of a salary, "not of an amount of time in which the defendant would guarantee to employ the plaintiff." Id. While it certainly may be true that a contract provision expressing an employee's compensation in terms of an annual salary does not create a contract for employment of definite duration, these cases are not instructive where the contractual language of duration was not linked to the plaintiff's compensation.

The language of the contract exhibits an employment contract for a definite term during which the plaintiff would be employed as optical laboratory manager, and all other conditions of employment articulated in the contract would be applicable.[3] The document is titled

---

[3] We note that the defendants argue that the court should have looked to the parties' intent and point to testimony from Aube stating that he did not intend for the document to act as a guarantee of employment. However, "[t]he question is not what intention existed in the minds of the parties but what intention is expressed in the language used. . . . In interpreting contract items, we have repeatedly stated that the intent of the parties is to be ascertained *by a fair and reasonable construction of the written words* .

"Norma Cruz Employment Contract" and begins with the statement, "This will cover the 36 month period starting April 1, 2007 and ending March 31, 2010."[4] We conclude that the plain language of the contract unambiguously demonstrates that the parties intended to create a contract for a definite duration of thirty-six months. It specifically provides how many personal days would be allocated to the plaintiff for the duration of the contract[5] and provides that any increase in health insurance premium would be absorbed by the defendant "for the *duration of the contract.*" (Emphasis added.) In light of the foregoing, the court's finding that the March 1, 2007 document was an employment contract for a definite term is not clearly erroneous.

## B

Having concluded that the contract is one for a definite term, we turn to the issue of whether the plaintiff was employed at will. The defendants assert that merely including a term of employment does not create an enforceable promise of guaranteed employment for the term of the contract. They argue that, absent a provision explicitly stating that the plaintiff could only be terminated for just cause, the plaintiff remained an at-will employee. We disagree.

---

. . ." (Citations omitted; emphasis added; internal quotation marks omitted.) *Barnard* v. *Barnard*, 214 Conn. 99, 110, 570 A.2d 690 (1990). "Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." (Internal quotation marks omitted.) *Levine* v. *Massey*, 232 Conn. 272, 279, 654 A.2d 737 (1995). Because we conclude that the language of the contract is unambiguous, the contract must be given effect according to its terms.

[4] Unlike the dissent, we perceive no ambiguity in the phrase "[t]his will cover the 36 month period . . . ." The provision means that the contract, and the terms therein, would be applicable for the period starting April 1, 2007, and ending March 31, 2010.

[5] The contract provides that the plaintiff will have ten personal days available to her in 2007, twelve days in 2008, fourteen days in 2009 and fifteen days in 2010.

"In Connecticut, an employer and employee have an at-will employment relationship in the absence of a contract to the contrary. Employment at will grants both parties the right to terminate the relationship for any reason, or no reason, at any time without fear of legal liability." (Internal quotation marks omitted.) *Thibodeau* v. *Design Group One Architects, LLC*, 260 Conn. 691, 697–98, 802 A.2d 731 (2002). Parties must specifically contract for a right to be terminated only for cause. *Torosyan* v. *Boehringer Ingelheim Pharmaceuticals, Inc.*, 234 Conn. 1, 14–15, 662 A.2d 89 (1995). Employment contracts of indefinite duration are terminable at the will of either party. *Somers* v. *Cooley Chevrolet Co.*, 146 Conn. 627, 629, 153 A.2d 426 (1959) ("[t]he plaintiff's employment was indefinite as to duration, and either party could have legally terminated it at any time with or without cause").

The presumption of at-will employment does not apply to contracts that create employment for a fixed duration. *Slifkin* v. *Condec Corp.*, supra, 13 Conn. App. 548–49; see also *Taravella* v. *Wolcott*, 599 F.3d 129, 134 (2d Cir. 2010) ("Under Connecticut law, employment is at-will by default, and parties must specifically contract a right to be terminated only for cause. . . . An exception exists for contracts that create employment for a fixed period."). In *Slifkin*, a provision in the parties' employment contract stated that the plaintiff " 'would be afforded an opportunity to continue in the employ of [the defendant] for a sufficient number of years to qualify for 100% vesting in each of the employer benefit plans,' " an ascertainable period of time. *Slifkin* v. *Condec Corp.*, supra, 548. There was no condition in the contract expressly requiring satisfactory performance by the plaintiff, nor was there a provision providing bases for the plaintiff's discharge. Id., 545–47. The plaintiff's employment was terminated before the vesting of his employer benefit plans. Id., 539–40. This court

determined that it was a contract for a definite or determinable period of time, and held that "[a]n employment contract for a definite or determinable term . . . may be terminated by either party only for good or just cause." Id., 549; see also 24 S. Williston, Contracts (4th Ed. 2002) § 66:1, p. 382 ("unless the employment contract specifically obligates both the employer and the employee for a definite term of employment, the employment is considered to be indefinite and terminable at the will of either party"); S. Harris, 14 Connecticut Practice Series: Connecticut Employment Law (2005) § 1.2, p. 3 ("[t]he employment at-will rule will not apply when the employer and employee have expressly agreed, subject to traditional contract formation principles, that employment will be for a specified duration or term").

The court, having determined that the contract was an employment contract for a definite term of thirty-six months, relied on *Slifkin* to find that the contract was therefore only terminable for good or just cause. While the defendants argue that the fact that the document does not contain an explicit promise that the plaintiff could not be terminated except for good cause means that she remained an at-will employee, their argument does not comport with *Slifkin*.[6] As we discussed in part I A of this opinion, the plaintiff's contract with the defendants was for a definite period of time, lasting from April 1, 2007 through March 31, 2010. As an employment contract for a definite term, it could

---

[6] Instead, the defendants rely on *Gaudio* v. *Griffin Health Services Corp.*, 249 Conn. 523, 533, 733 A.2d 197 (1999), to argue that where an employment agreement does not contain express contract language definitively stating that an employee is at-will or terminable only for just cause, the determination of what the parties intended to encompass in their contractual commitments is a question of the intention of the parties. *Gaudio*, however, involved an implied contract arising from an employment manual, and not an express contract for a definite term, as in the present case. Id., 525–26.

only be terminated for good cause. See *Slifkin* v. *Condec Corp.*, supra, 13 Conn. App. 548–49. The court found for the plaintiff because it concluded that the defendants did not have good or just cause to terminate the plaintiff's employment, and the defendants do not challenge that finding on appeal. Accordingly, we conclude that the court properly determined that the plaintiff was discharged in violation of the contract.

## II

The defendants also claim that the court improperly awarded the plaintiff consequential damages as a result of medical expenses she incurred due to the loss of health insurance coverage. We agree with the plaintiff that the record is inadequate to review this claim.

During the trial, the plaintiff introduced into evidence medical bills over the defendants' objection. The plaintiff was provided health insurance coverage through the defendants' COBRA[7] plan. While she used that coverage for a period of time, she ended the coverage and testified at trial that it was because she could no longer afford the premium. The medical bills were for treatment she received during the time period specified in her contract after her health insurance coverage lapsed. In her posttrial brief, she requested $4269.94 for those medical bills as part of the damages for her breach of contract claim.[8] The court awarded damages as

[7] See the Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. §§ 1161-68.

[8] This was an award of consequential damages. The Restatement (Second) of Contracts provides that an injured party has a right to damages as measured by: (1) direct damages, consisting of "the loss in value to him of the other party's performance caused by its failure or deficiency"; 3 Restatement (Second), Contracts § 347 (a) (1981); plus, (2) "any other loss, including incidental or consequential loss, caused by the breach . . . ." Id., § 347 (b). "Consequential damages . . . include those damages that, although not an invariable result of every breach of this sort, were reasonably foreseeable or contemplated by the parties at the time the contract was entered into as a probable result of a breach." (Internal quotation marks omitted.) *Milford* v. *Coppola Construction Co.*, 93 Conn. App. 704, 715, 891 A.2d 31 (2006).

requested by the plaintiff, noting that the defendants presented no evidence contradicting the plaintiff's calculation of damages. The award of damages was subject to a recalculation pending an accounting to determine the amount owed to the plaintiff for her bonus and commission, and a hearing on the matter was scheduled for December 6, 2010.

On November 17, 2010, the defendants filed a motion for reargument and reconsideration. They argued that the court's conclusions as to consequential damages for loss of medical insurance were contradictory to the plaintiff's testimony at trial. They also argued that the court failed to factor the plaintiff's final paycheck into its calculation of damages. On December 6, 2010, the court granted the motion as to the claim relating to the final paycheck. Upon reargument, the plaintiff agreed to withdraw her claim as to that amount.

On appeal, the defendants claim that the plaintiff was not entitled to consequential damages for her medical expenses because it was not reasonably foreseeable that she would terminate her insurance coverage after her discharge. "The general rule in breach of contract cases is that the award of damages is designed to place the injured party, so far as can be done by money, in the same position as that which he would have been in had the contract been performed. . . . In making its assessment of damages for breach of [any] contract the trier must determine the existence and extent of any deficiency and then calculate its loss to the injured party. The determination of both of these issues involves a question of fact which will not be overturned unless the determination is clearly erroneous." (Internal quotation marks omitted.) *Briggs* v. *Briggs*, 75 Conn. App. 386, 399, 817 A.2d 112, cert. denied, 263 Conn. 912, 821 A.2d 767 (2003).

In the present case, the court provided no factual or legal basis for its award of consequential damages, and

no articulation was requested. "When the decision of the trial court does not make the factual predicates of its findings clear, we will, in the absence of a motion for articulation, assume that the trial court acted properly." *DeLuca* v. *DeLuca*, 37 Conn. App. 586, 588, 657 A.2d 690 (1995). "Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by the trial court." (Internal quotation marks omitted.) *Ocwen Federal Bank, FSB* v. *Charles*, 95 Conn. App. 315, 329, 898 A.2d 197, cert. denied, 279 Conn. 909, 902 A.2d 1069 (2006). Because the record is inadequate with respect to the basis of the court's award of consequential damages, we cannot conclude that the award was clearly erroneous.

The judgment is affirmed.

In this opinion SCHALLER, J., concurred.

LAVINE, J., dissenting. I respectfully dissent from the majority opinion because I conclude that the March 1, 2007 agreement (2007 agreement) signed by the plaintiff, Norma I. Cruz, and the defendant Robert W. Aube, Jr., is a compensation agreement, not a contract guaranteeing three years of employment with the defendant Visual Perceptions, LLC. Neither the plaintiff, nor Aube believed the agreement guaranteed three years of employment when the agreement was entered into. For this reason, and others, I would reverse the judgment of the trial court.

The issue in this case turns, in part, on the meaning of the first sentence of the 2007 agreement, which states, "[t]his will cover the 36 month period starting April 1, 2007 and ending March 31, 2010." The word "[t]*his* frequently creates ambiguity because it can refer to any idea or object and because it often starts a sentence."[1]

---

[1] "To avoid the problem, add the appropriate noun after *this*." (Emphasis in original.) M. Ray & J. Ramsfield, Legal Writing: Getting It Right and Getting It Written (2d Ed. 1993) p. 312.

(Emphasis in original.) M. Ray & J. Ramsfield, Legal Writing: Getting It Right and Getting It Written (2d Ed. 1993) p. 312; see also A. Lunsford & R. Connors, The St. Martin's Handbook (3d Ed. 1995) p. 266. Unlike the majority, I conclude that the first sentence is ambiguous.[2]

"It is generally said that, in interpreting the words of a contract, the courts seek the meaning and intention of the parties. Inasmuch as the parties may have attached different meanings and may have had different intentions at the time of formation of the contract, the court must determine which party's meaning and intention should prevail. In the alternative, the court may discover that the parties' failure to agree has resulted either in no contract having been formed or in the omission from the contract of a disputed term." 5 A. Corbin, Contracts (1998) § 24.5, p. 15. "The individual clauses of a contract . . . cannot be construed by taking them out of context and giving them an interpretation apart from the contract of which they are a part. . . . When there are multiple writings regarding the same transaction, the writings should be considered together to determine the intent of the parties." (Citations omitted; internal quotation marks omitted.) *Frantz* v. *Romaine*, 93 Conn. App. 385, 395, 889 A.2d 865, cert. denied, 277 Conn. 932, 896 A.2d 100 (2006).

In considering the defendants' claims on appeal, I am mindful of the legal context in which the plaintiff and Aube signed the 2007 agreement. "In Connecticut, an employer and employee have an at-will employment relationship in the absence of a contract to the contrary.

---

[2] The fact that the 2007 agreement is entitled "Norma Cruz Employment Contract" does not support the argument that it was an employment contract for a term of years. It is agreed that the plaintiff and Aube reached an agreement; the dispute centers on what kind of contract was created; e.g., a contract fixing compensation for a period of time or a contract assuring employment for a fixed period of time.

Employment at will grants both parties the right to terminate the relationship for any reason, or no reason, at any time without fear of legal liability." (Internal quotation marks omitted.) *Thibodeau* v. *Design Group One Architects, LLC,* 260 Conn. 691, 697–98, 802 A.2d 731 (2002). "Pursuant to traditional contract principles, however, the default rule of employment at will can be modified by the agreement of the parties." *Torosyan* v. *Boehringer Ingelheim Pharmaceuticals, Inc.,* 234 Conn. 1, 15, 662 A.2d 89 (1995).

I disagree with the majority's assertion that the plain language of the contract unambiguously demonstrates that the parties intended to create a contract for a definite duration of thirty-six months. Nowhere does it so state. In this case, there is clearly ambiguity as to whether a contract for a term of employment for a definite duration was created. Given that the 2007 agreement contains no mention of termination, even for cause, I conclude that, at the time the parties signed the agreement, neither one of them contemplated an agreement at odds with Connecticut law or that the plaintiff was anything other than an at-will employee. Without a clear and explicit statement that the plaintiff was to be employed for a specific period of time, the agreement between the parties must be construed as an employment at will agreement. See id., 14–15. Moreover, the testimony of the parties demonstrates that the 2007 agreement was signed by the plaintiff and Aube to establish the amount of the plaintiff's compensation for the next three years, not to guarantee employment for a fixed term of three years.

The plaintiff was employed by Visual Perceptions, LLC, in February, 2006. At the time, she and Aube signed an agreement concerning the plaintiff's compensation, commission opportunities, benefits and schedule. The February, 2006 agreement provided, in part, that "[t]his will cover the 12 month period starting February 28,

2006 unless a different contract is agreed upon during that time."[3] On April 6, 2006, the plaintiff and Aube signed a second agreement that provided in part that "[t]his will cover the 12 month period starting April 10, 2006 unless a different contract is agreed upon during that time."[4] Aube testified that the plaintiff "was hired as an assistant to our then optician, and then when the optician left, she was promoted to [laboratory] manager." The plaintiff testified that neither of those agreements lasted twelve months and that she sought to renegotiate the terms of the first two agreements.

In February, 2007, the plaintiff approached Aube to renegotiate her compensation. She prepared handwritten notes for the meeting, which were placed into evidence.[5] The plaintiff testified that the notes were to be used when she asked for a raise. "I wrote the notes down so that I can discuss the reasoning for my wanting to have a higher salary." Importantly, the notes mention no time frame to which the salary request applied and are strictly related to compensation. The plaintiff testified that she did not ask Aube to guarantee thirty-six months of employment, as it was Aube's idea to set the thirty-six month term for her compensation. As a result of the negotiations between the plaintiff and Aube, Aube drafted the 2007 agreement. He testified that he did not intend the 2007 agreement to be a contract for three years of employment, but to establish the plaintiff's

[3] The February, 2006 agreement contains no termination of employment provision.

[4] The April, 2006 agreement contains no termination of employment provision.

[5] The plaintiff's handwritten notes contain the following: "*Yearly* Income $65,000 *Not* Including Bonus *or* additional days worked Health & Dental— stays as is Vacation days— Sick Days/personal. 65,000 [divided by] 12 months = 5416.67 (monthly) [divided by] 134 hours (not including additional days worked or bonuses = $40.42 hrly ($12.87 raise.) Loss of Hours For Licensing. 134 monthly x 12 = 1608 hours + 300 + 1900 + hours lost." (Emphasis in original.)

salary for the next three years. He and the plaintiff had renegotiated her salary three times in the past year.[6]

During Aube's direct examination by counsel for the defendants, he testified: "I did not intend this to be a guaranteed contract. I intended this to be a term of employment, a term of compensation for thirty-six months. Not even employment, just that's what she would be paid while she worked for me over that time." He did not include a termination provision in the 2007 agreement because his "understanding was this was an at-will state, and I was able to terminate an employee at any time."

Given the ambiguity of the first sentence in the 2007 agreement, the absence of any term abrogating the

---

[6] On direct examination by the plaintiff's counsel, Aube testified in part as follows:

"[The Plaintiff's Counsel]: These are the terms of her employment. Now, you agreed with her that she would be employed for a period of thirty-six months. Correct?

"Aube: No.

"[The Plaintiff's Counsel]: Okay. So when you entered into an agreement that says this will cover the thirty-six month period starting April 1, 2007, and ending March 31, 2010, you didn't mean that. Is that what your testimony is?

"Aube: Correct.

* * *

"[The Plaintiff's Counsel]: Okay. So all the other terms in here, including total compensation, would be $65,693.32, plus potential monthly bonuses, all of these terms were terms that you agree on with [the plaintiff]. Correct?

"Aube: Yes. . . .

"[The Plaintiff's Counsel]: Now, it's your testimony, then, that all of the conditions—terms in this agreement are terms that you intended, but the first sentence is something you didn't mean?

"Aube: Well, that was the third contract that we had—or terms of employment that we had discussed in one year, so my intention was to just keep her salary stable for the next three years and not have to keep doing it over and over again.

"[The Plaintiff's Counsel]: Okay.

"Aube: So my intention was that that would be her terms of employment for the next thirty-six months so we didn't have to keep going back to the drawing board every few months, because we had done it three times in one year."

employment at-will doctrine, the plaintiff's testimony that she was not seeking a three year agreement and Aube's testimony that he wanted to fix the plaintiff's compensation for a three year period, I conclude that the 2007 agreement was not an employment contract for a term of thirty-six months, but a compensation agreement in effect from April 1, 2007 until March 31, 2010.[7] There was no meeting of the minds that a three year contract of employment was being created.

For the foregoing reasons, I respectfully dissent.

---

[7] Because I conclude that the 2007 agreement is a compensation agreement, not an employment contract for a term of three years, I do not reach the defendants' second claim.