******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

NORMA I. CRUZ *v.* VISUAL PERCEPTIONS,
LLC, ET AL.
(SC 19015)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and
Vertefeuille, Js.

*Argued October 31, 2013—officially released February 11, 2014*

*David R. Makarewicz*, with whom was *Richard D. Carella*, for the appellants (defendants).

*Proloy K. Das*, with whom was *Andrew L. Houlding*, for the appellee (plaintiff).

*Opinion*

ROGERS, C. J. The issue that we must resolve in this certified appeal is whether the trial court properly determined that a letter agreement between the parties plainly and unambiguously constituted a contract for a defined period of time or, instead, the letter agreement reasonably could be interpreted as governing the terms and conditions of the plaintiff's at-will employment.[1] The plaintiff, Norma I. Cruz, brought an action against the defendant Visual Perceptions, LLC,[2] alleging that she and the defendant had entered into a letter agreement for a fixed term of employment of thirty-six months and that the defendant had violated the agreement by terminating her employment before the term expired, without good cause. After a trial to the court, the trial court concluded that, on its face, the letter agreement explicitly provided that the plaintiff's employment was for a fixed duration and that the defendant had breached the agreement by terminating the plaintiff without good cause. Accordingly, the court rendered judgment for the plaintiff and awarded her compensatory damages. The defendant then appealed to the Appellate Court claiming, inter alia, that the trial court improperly had concluded that the parties had entered into an employment contract for a fixed term. The Appellate Court affirmed the judgment of the trial court. *Cruz* v. *Visual Perceptions, LLC*, 136 Conn. App. 330, 342, 46 A.3d 209 (2012). We then granted the defendant's application for certification to appeal to this court on the following issue: "Did the Appellate Court properly affirm the trial court's determination that the plaintiff was a contract employee for a defined period of time and was discharged in violation of that contract?" *Cruz* v. *Visual Perceptions, LLC*, 306 Conn. 903, 903–904, 52 A.3d 730 (2012). We conclude that both the Appellate Court and the trial court improperly determined that, on its face, the letter agreement constituted a contract for a definite term. Instead, we conclude that the letter agreement was ambiguous on this point and, therefore, the trial court should have considered extrinsic evidence to determine the intent of the parties. Accordingly, we reverse the judgment of the Appellate Court and conclude that the case must be remanded to the trial court for further factual findings in a new trial.

The Appellate Court's majority opinion sets forth the following relevant facts and procedural history. "The plaintiff was hired as a laboratory manager by the defendant in February, 2006. On February 2, 2006, the plaintiff and [Robert W. Aube, Jr., the defendant's principal] signed a document that included the plaintiff's rate of compensation, commission opportunities, benefits and work schedule. Thereafter, on April 6, 2006, the plaintiff and Aube signed a second document that revised the terms of the plaintiff's employment, providing for a raise in her salary.

"In February, 2007, the plaintiff provided Aube with a handwritten list of updated terms of her employment wherein she requested another raise. On March 1, 2007, the plaintiff and Aube signed a third document, stating '[t]his will cover the [thirty-six] month period starting April 1, 2007 and ending March 31, 2010.'[3] Aube terminated the plaintiff's employment [with the defendant] on October 16, 2008, and [this] litigation followed.

"On January 6, 2010, the plaintiff filed a revised amended complaint.[4] Count one alleged that the March 1, 2007 document constituted an employment contract between the plaintiff and the defendant for a fixed term of thirty-six months, and that her termination breached that contract. Counts two and three sought an accounting and payment of commissions for the term of the alleged employment contract against the defendant and Aube, respectively. The [defendant and Aube] filed an answer denying the existence of an employment contract and claiming, by way of special defenses, rescission, payment, and accord and satisfaction as to all counts of the revised amended complaint. The [defendant and Aube] also claimed that Aube could not be liable personally pursuant to General Statutes § 34-134 as to count three. The defendant asserted a counterclaim against the plaintiff for breach of contract, breach of the covenant of good faith and fair dealing, and statutory theft pursuant to General Statutes § 52-564.

"The matter was tried to the court . . . . In its memorandum of decision, the court first determined that the March 1, 2007 document constituted a contract of employment for a definite term and was terminable only for good or just cause." (Footnotes altered.) *Cruz* v. *Visual Perceptions*, *LLC*, supra, 136 Conn. App. 332–33. Specifically, the trial court stated that "[o]n its face, the March 1, 2007 document contains the terms and conditions that were essential to the plaintiff's employment [by the defendant]. The document contains the plaintiff's job title and description, schedule, salary, conditions for the receipt of a bonus, health insurance and retirement contribution benefits. Most significantly, the document explicitly states the duration of the plaintiff's employment: thirty-six months, from April 1, 2007, to March 31, 2010. Because the March 1, 2007 document is definite and certain as to its terms and requirements, it constitutes a valid and binding term employment contract."[5]

"The court then determined that because the [defendant and Aube] did not present evidence to support a finding of good or just cause to terminate the plaintiff's employment, the plaintiff was discharged in violation of the contract [and the court therefore found for the plaintiff on counts one and two of the revised amended complaint].[6] The court found that the plaintiff was entitled to damages from the date of her termination through the end date of the term of the contract. On

December 6, 2010, the court awarded the plaintiff $60,964.11, representing the plaintiff's lost wages, less unemployment compensation, with the addition of medical expenses incurred due to a loss of health insurance coverage and an underpaid bonus." (Footnote added.) *Cruz* v. *Visual Perceptions, LLC*, supra, 136 Conn. App. 333. Thereafter, the trial court rendered judgment for the plaintiff on counts one and two of the revised amended complaint.

The defendant then appealed to the Appellate Court. A majority of that court concluded that "the plain language of the contract unambiguously demonstrates that the parties intended to create a contract for a definite duration of thirty-six months. It specifically provides how many personal days would be allocated to the plaintiff for the duration of the contract and provides that any increase in health insurance premium would be absorbed by the defendant 'for the *duration of the contract*.' " (Emphasis in original; footnote omitted.) Id., 337. The Appellate Court concluded that, because "the language of the contract is unambiguous, the contract must be given effect according to its terms." Id., 337 n.3. Accordingly, the Appellate Court held that "the [trial] court's finding that the March 1, 2007 document was an employment contract for a definite term is not clearly erroneous."[7] Id., 337. The Appellate Court therefore affirmed the judgment of the trial court. Id., 342. This certified appeal followed.

The defendant claims on appeal that the Appellate Court improperly concluded that the language of the March 1, 2007 document (letter agreement), on its face, plainly and unambiguously demonstrates that the parties intended to create a contract for a definite term of thirty-six months.[8] The defendant contends that the language of the letter agreement was ambiguous because it reasonably could be interpreted as governing the terms and conditions of the defendant's at-will employment of the plaintiff. Accordingly, it contends, the trial court should have considered extrinsic evidence to determine the parties' intent. It further contends that, although the trial court did not consider it, the extrinsic evidence clearly demonstrates that the parties did not intend to enter into a contract for a definite term of employment. The plaintiff contends that, to the contrary, the Appellate Court properly affirmed the trial court's determination that the letter agreement, on its face, was a contract for a definite term. We conclude that the letter agreement was ambiguous on its face as to whether it created a contract for a definite term or, instead, governed the terms and conditions of the defendant's at-will employment of the plaintiff. We further conclude that the trial court must consider the extrinsic evidence and make factual findings as to the parties' intent.

We begin with our standard of review. The defendant

contends that, because the trial court relied exclusively upon the language of the letter agreement to determine the intent of the parties, its interpretation of the contract is subject to plenary review. The plaintiff contends that, to the contrary, because the question of contract interpretation, being a question of the parties' intent, is a question of fact, the Appellate Court properly subjected the trial court's interpretation to review for clear error. We conclude that, because the trial court relied solely on the language of the letter agreement, which it determined to be plain and unambiguous, and because the parties disagree on that issue, the first question that this court must address is not whether the trial court's substantive interpretation of the contract was correct, but the more fundamental question of whether the relevant language was plain and unambiguous. We conclude that that determination is a question of law subject to plenary review.

"When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact . . . ." (Internal quotation marks omitted.) *Ramirez* v. *Health Net of the Northeast, Inc.*, 285 Conn. 1, 13, 938 A.2d 576 (2008). "[W]here there is definitive contract language, [however] the determination of what the parties intended by their contractual commitments is a question of law." (Internal quotation marks omitted.) *Tallmadge Bros., Inc.* v. *Iroquois Gas Transmission System, L.P.*, 252 Conn. 479, 495, 746 A.2d 1277 (2000); see also id., quoting 11 S. Williston, Contracts (4th Ed. 1999) § 30:6, pp. 77–83 ("[t]he interpretation and construction of a written contract present only questions of law, within the province of the court . . . so long as the contract is unambiguous and the intent of the parties can be determined from the agreement's face" [internal quotation marks omitted]); *Gateway Co.* v. *DiNoia*, 232 Conn. 223, 230, 654 A.2d 342 (1995) ("because the trial court relied solely upon the written agreements in ascertaining the intent of the parties, the legal inferences properly to be drawn from the documents are questions of law, rather than fact"). It is implicit in this rule that the determination as to whether contractual language is plain and unambiguous is itself a question of law subject to plenary review.[9] *United Illuminating Co.* v. *Wisvest-Connecticut, LLC*, 259 Conn. 665, 669–70, 791 A.2d 546 (2002) (determination as to whether contract is ambiguous is subject to de novo review).[10]

Accordingly, we must consider de novo whether the language in the letter agreement was plain and unambiguous. "In determining whether a contract is ambiguous, the words of the contract must be given their natural and ordinary meaning. . . . A contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . Moreover, the mere fact that

the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Citations omitted; internal quotation marks omitted.) Id., 670.

"In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . [A]ny ambiguity in a contract must emanate from the language used by the parties. . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so." (Citations omitted; internal quotation marks omitted.) Id., 670–71. "If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." Id., 671.

We conclude that the language of the letter agreement at issue in the present case reasonably may be interpreted as evincing *either* an intent to create a definite term of employment *or* an intent to set the terms and conditions of an at-will employment contract. First, the sentence providing that "[t]his will cover the [thirty-six] month period starting April 1, 2007, and ending March 31, 2010"—a sentence on which both the trial court and the Appellate Court relied on heavily in support of their interpretation—is, on its face, entirely consistent with either intent. The sentence does not plainly and unambiguously provide that the duration of the plaintiff's employment will be thirty-six months or that she could not be terminated within that period, except for good cause, but reasonably can be interpreted as providing that the terms and conditions set out in the letter would apply during that period *if the plaintiff continued to be employed by the defendant.*

Similarly, the portion of the letter agreement providing that any increase in health insurance premiums would be absorbed by the defendant "for the duration of the contract" does not plainly and unambiguously indicate what the parties intended the duration of the agreement to be. The contractual language reasonably could be interpreted as contemplating that the agreement would terminate either when the plaintiff voluntarily left employment or was terminated by the defendant, or at the end of the thirty-six month period. The same reasoning applies to the provision governing the paid personal days that the plaintiff would receive in each year during the thirty-six month period. Accordingly, we conclude that the letter agreement was ambiguous.[11] Compare *Slifkin* v. *Condec Corp.*, 13 Conn. App. 538, 548, 538 A.2d 231 (1988) (language in employment contract providing that employee "would be afforded an opportunity to continue in the employ of [the employer] for a sufficient number of years to qualify for 100 [percent] vesting in each of the employer benefit plans" plainly and unambiguously constituted contract of employment for specified period [internal quotation

marks omitted]).[12]

When contractual language is plain and unambiguous, "to permit oral testimony, or prior or contemporaneous conversations, or circumstances, or usages [etc.], in order to learn what was intended, or to contradict what is written, would be dangerous and unjust in the extreme." (Internal quotation marks omitted.) *Tallmadge Bros., Inc.* v. *Iroquois Gas Transmission System, L.P.*, supra, 252 Conn. 502. Parol evidence is admissible, however, "to explain an ambiguity appearing in the instrument . . . ." (Internal quotation marks omitted.) *Schilberg Integrated Metals Corp.* v. *Continental Casualty Co.*, 263 Conn. 245, 277, 819 A.2d 773 (2003); see also id. ("[t]he parol evidence rule does not of itself, therefore, forbid the presentation of parol evidence, that is, evidence outside the four corners of the contract . . . but forbids only the use of such evidence to vary or contradict the terms of . . . a contract" [internal quotation marks omitted]).

Because the letter agreement was ambiguous as to whether it was intended to constitute a contract of employment for a definite term or, instead, was intended to set the terms and conditions of an at-will employment contract, the trial court was required to resolve this ambiguity by considering the extrinsic evidence and making factual findings as to the parties' intent. It is elementary that neither this court nor the Appellate Court can find facts in the first instance. *Holley* v. *Commissioner of Correction*, 62 Conn. App. 170, 180, 774 A.2d 148 (2001) ("[a]n appellate court cannot find facts or draw conclusions from primary facts found, but may only *review* such findings to see whether they might be legally, logically and reasonably found" [emphasis in original; internal quotation marks omitted]). Accordingly, we conclude that the Appellate Court improperly affirmed the judgment of the trial court in favor of the plaintiff on the ground that the letter agreement plainly and unambiguously evinced the parties' intent that it would be for a definite term, and the case must be remanded to the trial court so that the court may resolve the ambiguity as to the parties' intent on the basis of the extrinsic evidence.[13]

Finally, because it is likely to arise on remand, we address the plaintiff's claim that, under the rule of contra proferentum, the letter agreement should be construed against the defendant because it drafted the contract. "After the court has examined all of the other factors that affect the search for the parties' intended meaning . . . and the only remaining question is which of two possible and reasonable meanings should be adopted, the court will often adopt the meaning that is less favorable in its legal effect to the party who chose the words. This technique is known as contra proferentum. . . . The . . . rule has been described as being applicable only as a last resort, when other techniques

of interpretation and construction have not resolved the question of which of two or more possible meanings the court should choose. One court wrote that the rule is a tie breaker *when there is no other sound basis for choosing one contract interpretation over another*. The rule is not applicable at all if only one reasonable meaning is possible. . . . [The rule] directs the court to choose between two or more possible reasonable meanings on the basis of their legal operation, i.e., whether they favor the drafter or the other party." (Citations omitted; emphasis altered; internal quotation marks omitted.) *Montoya* v. *Montoya*, 91 Conn. App. 407, 420–21, 881 A.2d 319 (2005), rev'd in part on other grounds, 280 Conn. 605, 909 A.2d 947 (2006).

Thus, the trial court in the present case should invoke the rule of contra proferentum only as a last resort if it is unable to resolve the ambiguity in the letter agreement by considering the extrinsic evidence. It would make absolutely no sense to require the trial court to construe the agreement against the defendant if the extrinsic evidence showed that it was more likely than not that the parties had a contrary intent.[14]

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case to that court for a new trial.

In this opinion PALMER, ZARELLA, EVELEIGH, ESPINOSA and VERTEFEUILLE, Js., concurred.

[1] "Employment at will grants both parties the right to terminate the relationship for any reason, or no reason, at any time without fear of legal liability." (Internal quotation marks omitted.) *Thibodeau* v. *Design Group One Architects, LLC*, 260 Conn. 691, 697–98, 802 A.2d 731 (2002).

[2] The plaintiff's complaint also named as a defendant Robert W. Aube, Jr., a doctor of optometry, who was the principal of Visual Perceptions, LLC. The trial court concluded that Aube was not personally liable to the plaintiff. Accordingly, Aube was not aggrieved by the trial court's decision; see *Cadle Co.* v. *D'Addario*, 268 Conn. 441, 443 n.1, 844 A.2d 836 (2004) (party who prevails in trial court is not aggrieved); and neither the Appellate Court nor this court had appellate jurisdiction over his claims on appeal. See *State* v. *Scott*, 139 Conn. App. 333, 338, 55 A.3d 608 (2012) (proof of aggrievement is essential prerequisite to Appellate Court's jurisdiction); *State* v. *Preston*, 286 Conn. 367, 373 n.4, 944 A.2d 276 (2008) (proof of aggrievement is prerequisite to this court's jurisdiction). We note, however, that Aube and Visual Perceptions, LLC, filed a joint brief and none of the claims raised on appeal apply only to Aube. Because Visual Perceptions, LLC, was aggrieved by the decisions of the trial court and the Appellate Court, this court has jurisdiction to consider the claims. All references to the defendant in this opinion are to Visual Perceptions, LLC.

[3] The March 1, 2007 document provided: "Norma Cruz Employment Contract:

"This will cover the [thirty-six] month period starting April 1, 2007 and ending March 31, 2010. Your [t]itle would be Optical Lab Manager. You are responsible for all the eyeglasses produced from this office. You are responsible for the maintenance of the lens lab. You are responsible for the dispensary and all the related products and issues.

"You would work Monday (9:00–5:30), Tuesday (9:00–5:30), Wednesday (9:00–5:30) and Thursday (9:00–7:30); and then alternating Friday (9:00–5:30) and Saturday (9:00–12:30). You will be compensated [$2300] per two weeks ([$59,800] per year). You are a salaried employee and any overtime is included in your salary. If your work day falls on a major holiday, you would be paid for the day. You would receive an adjusted bonus of 1 [percent] of net receipts in a month minus [$650], paid in the first payroll after the month

ends. (If the monthly production is less than [$65,000], then no bonus). You will have matching 3 [percent] for the Simple IRA (at least $69 per pay period, [$1794] a year**) and health and dental insurance (Medical/Dental $341.61 per month, $4099.32 per year). Any increase in health insurance premium will be absorbed by [the defendant] for the duration of the contract.

"Total Compensation will be $65,693.32 plus potential monthly bonus.

"You will have [ten] paid personal days in 2007 that can be used for vacation/sick time. Once the [ten] days are used up your salary would be reduced $250 per day for any days missed. The days will be counted from January 1 to December 31, and reset to zero on January 1. You will have [twelve] days in 2008 and [fourteen] days in 2009 and [fifteen] days in 2010.

"**You need to put 3 [percent] into the IRA to get the matching funds, which you are currently doing. (3 [percent] of [$2300] equals [$69] and any bonus would increase the IRA matching funds.)"

[4] "The revised amended complaint contains six counts. Counts four and five [seeking an accounting and payment of precontractual commissions from, respectively, the defendant and Aube] were withdrawn by the plaintiff following argument held on July 6, 2010. Count six [alleging a violation of General Statutes § 46a-60 (a) (1), discriminatory employment practices] was dismissed by the court at the conclusion of the plaintiff's case-in-chief." *Cruz* v. *Visual Perceptions, LLC*, supra, 136 Conn. App. 332 n.2.

[5] Because the trial court concluded that the March 1, 2007 document was "definite and certain as to its terms and requirements," and it cited no extrinsic evidence in support of its determination that the contract constituted a "valid and binding term employment contract," it is clear that the trial court's interpretation was premised on a determination that the contractual language was plain and unambiguous.

[6] With respect to count three of the revised amended complaint, the court held that Aube could not be held personally liable.

[7] Judge Lavine issued a dissenting opinion in which he contended that the evidence presented to the trial court supported the conclusion that the March 1, 2007 document was not a contact for a definite term of employment, but was a "compensation agreement." *Cruz* v. *Visual Perceptions, LLC*, supra, 136 Conn. App. 342. Accordingly, he would have reversed the judgment of the trial court and directed a judgment for the defendant. Id. (*Lavine, J.*, dissenting).

[8] At oral argument before this court, the defendant conceded that, if this court concludes that the letter agreement was a contract for a definite term, the defendant could not terminate the plaintiff's employment without good cause.

[9] The plaintiff in the present case appears to claim that the trial court's interpretation is subject to review only for clear error even though the trial court and the Appellate Court relied solely on the language of the letter agreement in support of their interpretation. In support of this claim, she cites *Connecticut Light & Power Co.* v. *Lighthouse Landings, Inc.*, 279 Conn. 90, 109, 900 A.2d 1242 (2006), in which this court observed that, in "the majority of the cases considering contract interpretation a matter of law, the disputed agreement was a commercial contract between sophisticated commercial parties with relatively equal bargaining power." The plaintiff contends that because the letter agreement at issue in the present case was not such a contract, the trial court's interpretation cannot be subject to plenary review. This court merely observed in *Connecticut Light & Power Co.*, however, that courts are more likely to find commercial contracts between sophisticated parties to be plain and unambiguous. See id. (because "the lease was entered into by sophisticated parties, represented by competent counsel regarding the commercial interests of both parties, each with relatively equal bargaining power," trial court concluded that "the parties meant what they said and said what they meant in language sufficiently definitive to obviate any need for deference to the trial court's factual findings as to the parties' intent" [internal quotation marks omitted]); see also *United Illuminating Co.* v. *Wisvest-Connecticut, LLC*, 259 Conn. 665, 670, 791 A.2d 546 (2002) ("a presumption that the language used is definitive arises when . . . the contract at issue is between sophisticated parties and is commercial in nature"). These cases do not support the proposition that a trial court's finding that contractual language is so plain and unambiguous as to obviate the need for extrinsic evidence of contractual intent is subject to plenary review only if there was a commercial contract between sophisticated parties.

[10] To the extent that the Appellate Court held that the trial court's determination that the language of the letter agreement was plain and unambiguous

or its interpretation of the written contractual language were factual issues subject to review for clear error, any such holding was incorrect and is hereby overruled.

[11] The plaintiff contends in her brief to this court that, even if this court concludes that the language of the letter agreement is ambiguous, "[t]he only question for this court is whether it is *reasonable* to conclude that a document that: (1) is expressly titled 'Norma Cruz Employment Contract'; (2) is signed by both the plaintiff and [Aube]; (3) expressly states that it covers a 'thirty-six month period' with precise starting and ending dates; (4) contains other terms and conditions essential to an employment contract; and (5) provides that any health insurance premium increases would be absorbed by the defendant for the 'duration of the contract'; was an employment contract for a determinable period of time." (Emphasis in original.) The plaintiff makes no claim, however, that the trial court relied on any evidence outside the four corners of the letter agreement in reaching this conclusion. We can conceive of no reason why this court should give deference to the trial court's "reasonable" interpretation of ambiguous written contract language in contravention of the bedrock legal principles that, first, the interpretation of a written document is a question of law; see, e.g., *United Illuminating Co.* v. *Wisvest-Connecticut, LLC*, supra, 259 Conn. 669–70 (determination as to whether contractual language is plain and unambiguous is question of law subject to plenary review); *School District No. 8* v. *Lynch*, 33 Conn. 330, 333 (1866) ("[t]he construction of a written document is a matter of law, where the meaning is to be ascertained from the document itself; but where the meaning can be understood only from extrinsic facts, the construction is generally a question of fact for the jury"); and, second, when contract language is ambiguous and there is extrinsic evidence of the parties' intent, the trial court must consider that evidence. *Schilberg Integrated Metals Corp.* v. *Continental Casualty Co.*, 263 Conn. 245, 277, 819 A.2d 773 (2003).

[12] The dissenting justice states that, "[a]lthough the contract . . . does not specifically provide that the plaintiff could be terminated only for good cause, there was no need to so provide in light of well settled law . . . recognizing that such a condition is implied in a contract for a definite term." We cannot *presume* an intent to create an employment contract for a definite term if the contract language is ambiguous on that point, however, especially in light of the presumption under Connecticut law that employment is at will unless the employment contract provides to the contrary. See *Thibodeau* v. *Design Group One Architects, LLC*, 260 Conn. 691, 697, 802 A.2d 731 (2002) ("[i]n Connecticut, an employer and employee have an at-will employment relationship in the absence of a contract to the contrary" [internal quotation marks omitted]). The dissenting justice has provided no authority for the proposition that contractual language like that at issue in the present case—i.e., "[t]his [letter agreement] will cover the [thirty-six] month period starting April 1, 2007 and ending March 31, 2010"—unambiguously rebuts the presumption of at-will employment. Indeed, the cases that he cites support our conclusion that it does not. See *Taravella* v. *Wolcott*, 599 F.3d 129, 131, 134 (2d Cir. 2010) (letter agreement that "established the terms of [the plaintiff's] employment for a one-year period" was ambiguous as to whether plaintiff employee could be terminated only for cause within that period when agreement contemplated possibility of termination due to change of mayoral administration and provided that plaintiff could terminate employment with ten days notice); see also id., 143 (Straub, J., dissenting) (agreeing with majority that agreement providing that "[t]he term of the agreement shall be one year from [the] date of [the] signature" was ambiguous as to whether plaintiff could be terminated only for cause within that period [internal quotation marks omitted]); *Wilkerson* v. *Carriage Park Development Corp.*, 130 N.C. App. 475, 477–78, 503 S.E.2d 138 (verbal representations by defendant employer during employment negotiations that it contemplated building 500 houses and that plaintiff employee would receive bonus for each house built did not constitute verbal agreement that plaintiff would be entitled to work until all 500 houses were completed), review denied, 349 N.C. 534, 526 S.E.2d 478 (1998). Although, as the dissenting justice points out, the presumption of at-will employment can be overcome *either* by an express provision in the employment contract that employment can be terminated only for cause *or* by an express provision that the employment contract is for a definite term, if either provision is ambiguous, the ambiguity must be resolved with extrinsic evidence.

[13] If the trial court concludes on the basis of the extrinsic evidence that the parties intended to create an employment contract with a definite duration, it need not readdress the issue of whether the defendant terminated the plaintiff for cause. The trial court ruled in favor of the plaintiff on that issue in

the first trial, its ruling on the issue was affirmed by the Appellate Court, and the defendant has not challenged the Appellate Court's resolution of the issue on appeal to this court. Accordingly, it is the law of the case.

[14] The plaintiff points out that this court has stated that contracts between employers and employees should be construed against employers, in light of their superior bargaining power in drafting the contracts. See *Assn. Resources*, *Inc.* v. *Wall*, 298 Conn. 145, 184, 2 A.3d 873 (2010) ("[w]e agree with the plaintiff that the defendant, as drafter of the employment agreement, could have exercised its superior bargaining position to draft a more favorable provision"); *Ravetto* v. *Triton Thalassic Technologies, Inc.*, 285 Conn. 716, 741, 941 A.2d 309 (2008) (noting "the superior bargaining power of an employer that enters into an employment contract with an employee" given "the economic compulsion facing those in search of employment" [internal quotation marks omitted]). Even if that is the case, the trial court should apply this rule only after determining that the ambiguity in the contract cannot be resolved by considering extrinsic evidence of the parties' intent.